# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br>*ex rel.* **JOSHUA LEIGHR,**<br><br>    **PLAINTIFF,**<br><br>    v.<br><br>**SEARS HOLDINGS CORPORATION,**<br>3333 Beverly Road<br>Hoffman Estates, IL 60179<br><br>and<br><br><br>**KMART CORPORATION,**<br>3333 Beverly Road<br>Hoffman Estates, IL 60179<br><br>    **DEFENDANTS.** | Civil No._____<br><br>**COMPLAINT FOR<br>VIOLATIONS OF THE<br>FALSE CLAIMS ACT<br>31 U.S.C. §§ 3729 *ET SEQ.***<br><br><u>**FILED UNDER SEAL<br>AND IN CAMERA**</u><br><br><br><br><br>**JURY TRIAL DEMANDED** |

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States of America ex rel. Leighr v. Sears Holdings Corp., et al.*

1

# INTRODUCTION

1. This is a civil action brought by the United States against Kmart Corporation and Sears Holding Company, Inc., under the False Claims Act, 31 U.S.C. §§ 3729-33 (the "FCA"), and civil penalties and restitution owed to, the United States based on Defendants' violations of the FCA as well as the Anti-Kickback Statute (the "AKS"), 42 U.S.C. § 1320a-7b(b), for knowingly submitting false claims to the government for purposes of obtaining payment and for engaging in an illegal kickback scheme by offering remunerations to beneficiaries of government healthcare programs ("GHP" in singular form, "GHPs" in plural form).

2. Since approximately 2011, Defendants have knowingly engaged in a fraudulent "split-billing" scheme, designed to bill both GHPs as well as third parties for the same drug being dispensed, in order to create a profit for Kmart, and to reduce the copay for GHP beneficiaries thereby inducing the GHP beneficiaries to return to Kmart pharmacies.

3. Kmart did not inform the GHPs of this split-billing practice, and the GHPs were unaware that the copays for GHP beneficiaries' prescription drugs were being reduced.

4. This scheme violated (1) the FCA because Kmart was submitting claims for payment based on its acquisition cost and not informing GHPs that it was offering discounts to its customers who were GHP beneficiaries, and (2) the AKS because it offered remunerations to beneficiaries of GHPs in the form of discounted copays, in an attempt to increase the amount of customers at Kmart pharmacies and Kmart stores.

5. Defendants also violated the AKS and FCA by offering remunerations to GHP beneficiaries in the form of Gas Rewards discounts. This program, which Kmart implemented in 2012, incentivized GHP beneficiaries to use Kmart pharmacies by reducing the amount which GHP beneficiaries would have to pay at specific gas stations.

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States of America ex rel. Leighr v. Sears Holdings Corp., et al.*

6. Through this split-billing scheme and the Gas Rewards Program, Defendants have caused the submission of numerous false claims for payment to GHPs such as Medicare and Medicaid. As such, Defendants are liable under the FCA for damages for these numerous claims, which are discussed in detail below.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 and 31 U.S.C. § 3732(a). Leighr's federal cause of action for unlawful retaliation is authorized by 31 U.S.C. § 3730(h).

8. This Court has personal jurisdiction over Defendants pursuant to 31 U.S.C. § 3732(a), because the Defendant transacts business in this judicial district.

9. Venue is proper in this Court under 28 U.S.C. §1391(c), 1395(a), and 31 U.S.C. § 3732(a), because the complained of illegal acts occurred within this judicial district and because the Defendants transact business this judicial district.

## PARTIES

10. Relator Joshua Leighr is a citizen of the United States and resides in Kansas City, Missouri.

11. Since January 27, 2005, Relator has been employed by Defendants as a pharmacist.

12. Sears Holdings Corporation is a Delaware corporation with its principal place of business in Hoffman Estates, Illinois.

13. Kmart Corporation, a chain of discount stores, is a Delaware corporation, with its principal place of business in Hoffman Estates, Illinois. Kmart has over 1,000 pharmacies operating in its stores nationwide.

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States of America ex rel. Leighr v. Sears Holdings Corp., et al.*
3

Case 4:13-cv-00988-SRB   Document 1   Filed 10/11/13   Page 3 of 60

# FACTUAL ALLEGATIONS

## I.     The False Claims Act and The Anti-Kickback Statute

14. The FCA imposes civil liability on a person who, or entity that, knowingly uses a "false record or statement to get a false or fraudulent claim paid or approved by the Government" or any person who, or entity that, "conspires to defraud the Government by getting false or fraudulent claims allowed or paid." 31 U.S.C. §§ 3729.

15. Under § 3730(b), a private person, known as a "relator" or "*qui tam* relator," may bring an action for a violation of § 3729 for the person and for the United States Government.

16. When a private person brings an action under § 3730(b), the Government may elect to proceed with the action, or it may decline to take over the action, in which case the person bringing the action will have the right to conduct the action.

17. The FCA provides that any person who causes a false claim to be submitted to the Government is liable for a civil penalty of between $5,500 and $11,000 per claim plus three times the amount of damages the Government sustained. 31 U.S.C. § 3729(a); 28 C.F.R. § 85.3.  For purposes of the FCA, "the terms 'knowing' and 'knowingly' mean that a person ... (1) has actual knowledge of the information; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b).  "[N]o proof of specific intent to defraud is required" for a successful claim under the FCA. *Id.*

18. The AKS prohibits individuals or entities from knowingly and willfully "offer[ing]  or pay[ing] remuneration (including any kickback, bribe, or rebate)…to any person to induce such person…to purchase,…order,…or recommend purchasing…or ordering any good… or item for which payment may be made in whole or in part under a Federal health care program." 42 U.S.C. §

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States of America ex rel. Leighr v. Sears Holdings Corp., et al.*
4

Case 4:13-cv-00988-SRB   Document 1   Filed 10/11/13   Page 4 of 60

1320a-7b(b)(2)[1]. Violation of the AKS is a felony punishable by fines and imprisonment and can also result in exclusion from participation in federal health care programs. 42 U.S.C. § 1320a-7b(b)(2) and 42 U.S.C. § 1320a-7(b)(7).

## II.    Medicare and Medicaid

19. Title XVIII of the Social Security Act is the basis for the insurance program known as Medicare. Payments for Medicare services can be made only to an eligible provider. 42 U.S.C. § 1395f.

20. A provider becomes eligible to provide services and receive payments under Medicare after completing the enrollment process and agreeing to comply with the provisions laid out in 42 U.S.C. § 1395cc. Title XIX of the Social Security Act created the Medicaid program.

21. Unlike the Medicare entitlement program, Medicaid is a means-tested, needs-based social welfare program rather than a social insurance program. Medicaid receives funding from both the Federal and State Government.

22. The Defendants offer rebates to customers and receives payments for prescriptions from Medicare and Medicaid. Medicare pays the amount owed to providers out of the Federal Hospital Insurance Trust Fund. See 42 U.S.C. § 1395g. The payment process for Medicaid varies, depending on each state's individual program. See generally 42 U.S.C. § 1396.

---

[1] The Federal Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b), provides in part:
(b) Illegal remunerations
          *****
(2) Whoever knowingly and willfully offers any remuneration (including any kickback, bribe, or rebate) directly, overtly or covertly, in cash or in kind to any person to induce such person-
          (B) to purchase, lease, order, or arrange for or recommend purchasing, leasing or ordering any good, facility, service, or item for which payment may be made in whole or in part under a Federal health care program, shall be guilty of a felony and upon conviction thereof, shall be fined not more than $25,000 or imprisoned for not more than five years, or both.

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States of America ex rel. Leighr v. Sears Holdings Corp., et al.*

5

23. Under the FCA, liability arises when an entity submits or causes to be submitted a false or fraudulent claim for payment to the government. As a matter of established law, submissions of claims for payment to Medicare and Medicaid constitute submissions to the United States Government pursuant to the FCA.

24. Violations of the False Claims Act also occur when a Defendant fails to comply with a prerequisite to a government benefit, payment, or program, falsely certifies compliance, and receives the benefit.

## III. Relator's History of Employment at Kmart

25. On or about January 27, 2005, Leighr began working for Kmart as a pharmacist at the Kmart store in Liberty, Missouri.

26. In or about June 2010, however, Kmart closed the Liberty store's pharmacy and as a result, on July 3, 2010, Kmart terminated Leighr's employment. Leighr executed a waiver in exchange for payment equivalent to five weeks of his salary.

27. After his termination, Leighr's District Manager Ken Dunn ("Dunn") told Leighr that Kmart had no full-time positions available in the Kansas City area, so Leighr's only option was to take a severance package and after the five weeks were up, he could return as a Casual-on-Call pharmacist, which was a part-time position.

28. Dunn assured Leighr that when a full-time position became available, he could be rehired as a full-time pharmacist with benefits.

29. Leighr decided it was better to take the Casual-on-Call position, in hopes of securing a future full-time position.

30. On August 8, 2010, Leighr began his position as a Casual-on-Call pharmacist in Dunn's district in Missouri.

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States of America ex rel. Leighr v. Sears Holdings Corp., et al.*
6

Case 4:13-cv-00988-SRB   Document 1   Filed 10/11/13   Page 6 of 60

31. In September 2010, Dunn, district scheduler Charles "Hamp" Genola ("Genola"), and District Manager Tal Rozene ("Rozene") made an arrangement for Leighr to "float" to the Springfield, MO area.

32. The ability to "float" from one pharmacy district to another allowed Leighr to pick up extra hours and helped the Springfield area pharmacy, which was short-staffed. In February 2012, Leighr became a full-time employee of Kmart pharmacies again, but was not assigned to a specific Kmart pharmacy.

33. Leighr's duties as a floating pharmacist require him to travel anywhere between two and five hours away from his home to various Kmart pharmacies and back.

34. During his employment with Kmart, Leighr witnessed Kmart establish various types of fraudulent and incentive-based schemes which incentivized GHP beneficiaries to shop at its stores and pharmacies.

35. Leighr personally witnessed Kmart's split-billing scheme, which allows Kmart to profit by submitting claims for reimbursement to both a government healthcare program as well as third party, the sum of which is higher than Kmart's drug acquisition cost. This scheme also allows Kmart to profit by providing remunerations for GHP beneficiaries in the form of reduced copays, thereby increasing the amount of customers in both Kmart pharmacies and Kmart stores.

36. Leighr has also witnessed Kmart offer discounts on gas purchased at gas stations "BP" and "Speedway" to GHP beneficiaries, in exchange for GHP beneficiaries filling prescriptions at Kmart pharmacies.

37. Leighr has continued to oppose these schemes, has questioned the legality of such schemes in front of his supervisors, has refused to participate in these schemes, and as a result, Kmart supervisors and other pharmacy employees have retaliated against him.

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States of America ex rel. Leighr v. Sears Holdings Corp., et al.*
7

Case 4:13-cv-00988-SRB   Document 1   Filed 10/11/13   Page 7 of 60

## IV. Kmart's Fraudulent Split Billing Scheme

38. Since as early as March 2011, Kmart has redeemed and promoted manufacturer coupons for brand name drugs as a method to attract more customers to its pharmacies. Pharmaceutical manufacturers offer coupons to potential customers in an attempt to induce patients to use name-brand drugs, rather than using generic counterparts or therapeutically equivalent alternatives. Kmart uses the coupons to reduce the customers' copayments for expensive brand name drugs.

39. Kmart's use of the coupons is known as "split-billing" because it requires two transactions: Kmart first submits a claim to GHPs, e.g. Medicare, federal health plans, state government health plans, and Health Resources and Services Administration ("HRSA") 340B, and receives a reimbursement.

40. Then, Kmart submits another claim to a manufacturer or some other third party on the basis of the coupon, which reduces the customer copayment. Thus, the bill is split. While most of the discount is enjoyed by the GHP beneficiaries in the form of a reduced copay, Kmart receives a small profit with each transaction because the total reimbursement from both the government and the third party is greater than the drug acquisition cost.

41. Kmart violates the FCA by split-billing drugs for GHP beneficiaries, because GHP beneficiaries are ineligible for manufacturer coupons. This split-billing scheme is difficult to detect because it appears as if Kmart is submitting legitimate claims to third party providers.

42. Kmart benefits from applying manufacturers' coupons to customers' copayments because customers are more likely to use Kmart pharmacies when they receive discounts that lower their copayments. Further, by offering methods to lower customers' copayments, Kmart increases its customer base and foot traffic, which in turn leads to more non-pharmacy related purchases at Kmart.

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States of America ex rel. Leighr v. Sears Holdings Corp., et al.*
8

Case 4:13-cv-00988-SRB    Document 1    Filed 10/11/13    Page 8 of 60

43. Leighr has evidence that Kmart allowed GHP beneficiaries to use the coupons as early as March 2011, and personally witnessed and opposed split-billing when it first started.

44. Leighr witnessed this fraudulent scheme firsthand when he began working at the Jefferson City location often in September 2011, and he observed the frequency of illegal split-billing for GHP beneficiaries.

45. By law, GHP beneficiaries are ineligible for promotional offers that reduce the GHP beneficiaries' copayment. However, Kmart reduces the customer's copayment in order to reduce prices for customers and thus attract and retain more customers. In instances where the primary insurance carrier is a GHP, such as Medicare or state funded health plans, Kmart defrauds the government by submitting claims to third parties without notifying Medicare or Medicaid of its practices.

46. For example, on or about June 9, 2012, Kmart store 3655 filled transaction 2192568 for Lipitor for customer DR. DR is a Medicare beneficiary and Kmart submitted a claim for $202.46 to Medicare. Medicare then paid out $128.55, and the original customer copay was $36.00. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $36, and after the third party paid out $32.00, the customer copay was reduced to $4.00. The base cost of the drug for Kmart was $153.79. Therefore, Kmart made a profit of roughly $10.76, in addition to the dispensing fee of $1.20. In sum, Kmart illegally made a profit of $11.96 from DR's transaction.

47. The following table analyzes customer DR's transaction and clearly shows Kmart's false submission of claims to Medicare and illegal split-billing, which resulted in a net profit for Kmart:

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States of America ex rel. Leighr v. Sears Holdings Corp., et al.*
9

Case 4:13-cv-00988-SRB   Document 1   Filed 10/11/13   Page 9 of 60

| Pharmacy: | Store 3655 | |
|---|---|---|
| Transaction Number: | 2192568 | |
| Prescription: | Lipitor, 20 MG | |
| Date: | 06/09/2012 | |
| Cost of Drug to Kmart: | $153.79 | Drug acquisition cost |
| Submission to Medicare: | $202.46 | Charge submitted to the government |
| Original Co-Pay: | $36.00 | Charge submitted to third-party for reimbursement |
| Submission to Third Party: | $36.00 | Total submitted to third party |
| Third Party Reimbursement: | $32.00 | Reimbursed amount by third party via third party copay card |
| Customer Final Co-Pay: | $4.00 | Co-payment paid by Medicare beneficiary |
| Medicare Reimbursement: | $128.55 | Reimbursed amount paid by Medicare |
| | $165.75 | Total amount received by Kmart, comprised of Medicare reimbursement, third party reimbursement, customer co-pay, and dispensing fee ($1.20) |
| Kmart profit: | $11.96 | The difference between 1) the cost of the drug to Kmart, 2) Medicare reimbursement, and 3) the third-party reimbursement, and 4) the customer final co-pay. |

48. Relator has personal knowledge of hundreds of illegal transactions completed through split-billing which are alleged with particularity below:

1. On or about 10/22/2012, Kmart store 4220 filled transaction 2750733 for Lipitor for patient KL. LK is a Medicare beneficiary and Kmart submitted a claim for $202.08 to Medicare. Medicare then paid out $135.97, and the original customer copay was $40.00. However, Kmart then split the bill by submitting a claim to a third party, for $40.00, and after the third party paid out $36.00, the customer copay was reduced to $4.00. The drug acquisition cost to Kmart was $161.48. Therefore, Kmart made a profit of roughly $10.49, in addition to its dispensing fee.

2. On or about 10/2/2012, Kmart filled transaction 2207373 for Nexium for patient CM. CM is a Medicare beneficiary and Kmart submitted a claim for $235.74 to Medicare. Medicare then paid out $125.53, and the original customer copay was $67.60. However, Kmart then split the bill by submitting a claim to a third party, for $67.70, and after the third party paid out $49.60, the customer copay was reduced to $18.00. The drug acquisition cost to Kmart was

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States of America ex rel. Leighr v. Sears Holdings Corp., et al.*

10

$180.39. Therefore, Kmart made a profit of roughly $12.74 due to overpayment, in addition to its dispensing fee.

   3.     On or about 9/30/2012, Kmart filled transaction 2202888 for Nexium for patient CM. CM is a Medicare beneficiary and Kmart submitted a claim for $235.74 to Medicare. Medicare then paid out $125.53, and the original customer copay was $67.60. However, Kmart then split the bill by submitting a claim to a third party, for $67.60, and after the third party paid out $49.40, the customer copay was reduced to $18.00. The drug acquisition cost to Kmart was $180.39. Therefore, Kmart made a profit of roughly $12.74 due to overpayment, in addition to its dispensing fee.

   4.     On or about 7/28/2012, Kmart filled transaction 2198775 for Nexium for patient CM. CM is a Medicare beneficiary and Kmart submitted a claim for $235. 74 to Medicare. Medicare then paid out $125.53, and the original customer copay was $67.60. However, Kmart then split the bill by submitting a claim to a third party, for $67.60, and after the third party paid out $49.40, the customer copay was reduced to $18.00. The drug acquisition cost to Kmart was $180.39. Therefore, Kmart made a profit of roughly $12.74 due to overpayment, in addition to its dispensing fee.

   5.     On or about 6/25/2012, Kmart filled transaction 2194433 for Nexium for patient CM. CM is a Medicare beneficiary and Kmart submitted a claim for $229. 17 to Medicare. Medicare then paid out $121.90, and the original customer copay was $65.64. However, Kmart then split the bill by submitting a claim to a third party, for $65.64, and after the third party paid out $47.64, the customer copay was reduced to $18.00. The drug acquisition cost to Kmart was $175.14. Therefore, Kmart made a profit of roughly $12.40 due to overpayment, in addition to its dispensing fee.

   6.     On or about 5/24/2012, Kmart filled transaction 2190486 for Nexium for patient CM. CM is a Medicare beneficiary and Kmart submitted a claim for $229. 17 to Medicare. Medicare then paid out $121.90, and the original customer copay was $65.64. However, Kmart then split the bill by submitting a claim to a third party, for $65.64, and after the third party paid out $47.64, the customer copay was reduced to $18.00. The drug acquisition cost to Kmart was $175.14. Therefore, Kmart made a profit of roughly $12.40 due to overpayment, in addition to its dispensing fee.

   7.     On or about 4/25/2012, Kmart filled transaction 2186622 for Nexium for patient CM. CM is a Medicare beneficiary and Kmart submitted a claim for $229. 17 to Medicare. Medicare then paid out $121.90, and the original customer copay was $65.64. However, Kmart then split the bill by submitting a claim to a third party, for $65.64, and after the third party paid out $47.64, the customer copay was reduced to $18.00. The drug acquisition cost to Kmart was $175.14. Therefore, Kmart made a profit of roughly $12.40 due to overpayment, in addition to its dispensing fee.

   8.     On or about 3/21/2012, Kmart filled transaction 2182047 for Nexium for patient CM. CM is a Medicare beneficiary and Kmart submitted a claim for $229. 17 to Medicare. Medicare then paid out $121.90, and the original customer copay was $65.64. However, Kmart then split the bill by submitting a claim to a third party, for $65.64, and after the third party paid out $47.64, the customer copay was reduced to $18.00. The drug acquisition cost to Kmart was $175.14. Therefore, Kmart made a profit of roughly $12.40 due to overpayment, in addition to its dispensing fee.

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States of America ex rel. Leighr v. Sears Holdings Corp., et al.*
11

Case 4:13-cv-00988-SRB   Document 1   Filed 10/11/13   Page 11 of 60

9.	On or about 2/18/2012, Kmart filled transaction 2177851 for Nexium for patient CM. CM is a Medicare beneficiary and Kmart submitted a claim for $229. 17 to Medicare. Medicare then paid out $121.90, and the original customer copay was $65.64. However, Kmart then split the bill by submitting a claim to a third party, for $65.64, and after the third party paid out $47.64, the customer copay was reduced to $18.00. The drug acquisition cost to Kmart was $175.14. Therefore, Kmart made a profit of roughly $12.40 due to overpayment, in addition to its dispensing fee.

10.	On or about 1/13/2012, Kmart filled transaction 2173222 for Nexium for patient CM. CM is a Medicare beneficiary and Kmart submitted a claim for $229. 17 to Medicare. Medicare then paid out $121.90, and the original customer copay was $65.64. However, Kmart then split the bill by submitting a claim to a third party, for $65.64, and after the third party paid out $47.64, the customer copay was reduced to $18.00. The drug acquisition cost to Kmart was $175.14. Therefore, Kmart made a profit of roughly $12.40 due to overpayment, in addition to its dispensing fee.

11.	On or about 12/12/2011, Kmart filled transaction 2168449 for Nexium for patient CM. CM is a Medicare beneficiary and Kmart submitted a claim for $216.76 to Medicare. Medicare then paid out $115.05, and the original customer copay was $61.95. However, Kmart then split the bill by submitting a claim to a third party, for $177.00, and after the third party paid out $43.95, the customer copay was reduced to $18.00. The drug acquisition cost to Kmart was $165.35. Therefore, Kmart made a profit of roughly $11.65 due to overpayment, in addition to its dispensing fee.

12.	On or about 11/11/2011, Kmart filled transaction 2164600 for Nexium for patient CM. CM is a Medicare beneficiary and Kmart submitted a claim for $216.76 to Medicare. Medicare then paid out $115.05, and the original customer copay was $61.95. However, Kmart then split the bill by submitting a claim to a third party, for $177.00, and after the third party paid out $43.95, the customer copay was reduced to $18.00. The drug acquisition cost to Kmart was $165.35. Therefore, Kmart made a profit of roughly $11.65 due to overpayment, in addition to its dispensing fee.

13.	On or about 9/27/2011, Kmart filled transaction 2158228 for Nexium for patient CM. CM is a Medicare beneficiary and Kmart submitted a claim for $216.76 to Medicare. Medicare then paid out $115.05, and the original customer copay was $61.95. However, Kmart then split the bill by submitting a claim to a third party, for $177.00, and after the third party paid out $43.95, the customer copay was reduced to $18.00. The drug acquisition cost to Kmart was $165.35. Therefore, Kmart made a profit of roughly $11.65 due to overpayment, in addition to its dispensing fee.

14.	On or about 8/30/2011, Kmart filled transaction 2154387 for Nexium for patient CM. CM is a Medicare beneficiary and Kmart submitted a claim for $216.76 to Medicare. Medicare then paid out $115.05, and the original customer copay was $61.95. However, Kmart then split the bill by submitting a claim to a third party, for $177.00, and after the third party paid out $43.95, the customer copay was reduced to $25.00. The drug acquisition cost to Kmart was $165.35. Therefore, Kmart made a profit of roughly $18.65 due to overpayment, in addition to its dispensing fee.

15.	On or about 7/13/2011, Kmart filled transaction 2147986 for Nexium for patient CM. CM is a Medicare beneficiary and Kmart submitted a claim for $211.76 to Medicare. Medicare then paid out $115.05, and the original customer copay was $61.95. However, Kmart

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States of America ex rel. Leighr v. Sears Holdings Corp., et al.*
12

Case 4:13-cv-00988-SRB   Document 1   Filed 10/11/13   Page 12 of 60

then split the bill by submitting a claim to a third party, for $177.00, and after the third party paid out $43.95, the customer copay was reduced to $25.00. The drug acquisition cost to Kmart was $165.35. Therefore, Kmart made a profit of roughly $18.65 due to overpayment, in addition to its dispensing fee.

16.     On or about 6/12/2011, Kmart filled transaction 2143862 for Nexium for patient CM. CM is a Medicare beneficiary and Kmart submitted a claim for $211.76 to Medicare. Medicare then paid out $115.05, and the original customer copay was $61.95. However, Kmart then split the bill by submitting a claim to a third party, for $177.00, and after the third party paid out $43.95, the customer copay was reduced to $25.00. The drug acquisition cost to Kmart was $165.35. Therefore, Kmart made a profit of roughly $18.65 due to overpayment, in addition to its dispensing fee.

17.     On or about 5/6/2011, Kmart filled transaction 2138961 for Nexium for patient CM. CM is a Medicare beneficiary and Kmart submitted a claim for $211.76 to Medicare. Medicare then paid out $115.05, and the original customer copay was $61.95. However, Kmart then split the bill by submitting a claim to a third party, for $177.00, and after the third party paid out $43.95, the customer copay was reduced to $25.00. The drug acquisition cost to Kmart was $165.35. Therefore, Kmart made a profit of roughly $18.65 due to overpayment, in addition to its dispensing fee.

18.     On or about 4/2/2011, Kmart filled transaction 2133960 for Nexium for patient CM. CM is a Medicare beneficiary and Kmart submitted a claim for $211.76 to Medicare. Medicare then paid out $115.05, and the original customer copay was $61.95. However, Kmart then split the bill by submitting a claim to a third party, for $177.00, and after the third party paid out $43.95, the customer copay was reduced to $25.00. The drug acquisition cost to Kmart was $165.35. Therefore, Kmart made a profit of roughly $18.65 due to overpayment, in addition to its dispensing fee.

19.     On or about 3/2/2011, Kmart filled transaction 2129397 for Nexium for patient CM. CM is a Medicare beneficiary and Kmart submitted a claim for $211.76 to Medicare. Medicare then paid out $115.05, and the original customer copay was $61.95. However, Kmart then split the bill by submitting a claim to a third party, for $177.00, and after the third party paid out $43.95, the customer copay was reduced to $25.00. The drug acquisition cost to Kmart was $165.35. Therefore, Kmart made a profit of roughly $18.65 due to overpayment, in addition to its dispensing fee.

20.     On or about 2/2/2011, Kmart filled transaction 2125477 for Nexium for patient CM. CM is a Medicare beneficiary and Kmart submitted a claim for $211.76 to Medicare. Medicare then paid out $115.05, and the original customer copay was $61.95. However, Kmart then split the bill by submitting a claim to a third party, for $177.00, and after the third party paid out $43.95, the customer copay was reduced to $25.00. The drug acquisition cost to Kmart was $165.35. Therefore, Kmart made a profit of roughly $18.65 due to overpayment, in addition to its dispensing fee.

21.     On or about 12/15/2010, Kmart filled transaction 2118468 for Nexium for patient CM. CM is a Medicare beneficiary and Kmart submitted a claim for $200.06 to Medicare. Medicare then paid out $111.25, and the original customer copay was $59.91. However, Kmart then split the bill by submitting a claim to a third party, for $171.16, and after the third party paid out $36.91, the customer copay was reduced to $25.00. The drug acquisition cost to Kmart was

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States of America ex rel. Leighr v. Sears Holdings Corp., et al.*
13

Case 4:13-cv-00988-SRB   Document 1   Filed 10/11/13   Page 13 of 60

$165.35. Therefore, Kmart made a profit of roughly $17.17 due to overpayment, in addition to its dispensing fee.

22.     On or about 11/15/2010, Kmart filled transaction 2114027 for Nexium for patient CM. CM is a Medicare beneficiary and Kmart submitted a claim for $200.06 to Medicare. Medicare then paid out $111.25, and the original customer copay was $59.91. However, Kmart then split the bill by submitting a claim to a third party, for $171.16, and after the third party paid out $36.91, the customer copay was reduced to $25.00. The drug acquisition cost to Kmart was $165.35. Therefore, Kmart made a profit of roughly $17.17 due to overpayment, in addition to its dispensing fee.

23.     On or about 10/18/2010, Kmart filled transaction 2110102 for Nexium for patient CM. CM is a Medicare beneficiary and Kmart submitted a claim for $200.06 to Medicare. Medicare then paid out $111.25, and the original customer copay was $59.91. However, Kmart then split the bill by submitting a claim to a third party, for $171.16, and after the third party paid out $36.91, the customer copay was reduced to $25.00. The drug acquisition cost to Kmart was $165.35. Therefore, Kmart made a profit of roughly $17.17 due to overpayment, in addition to its dispensing fee.

24.     On or about 9/19/2010, Kmart filled transaction 2105985 for Nexium for patient CM. CM is a Medicare beneficiary and Kmart submitted a claim for $200.06 to Medicare. Medicare then paid out $111.25, and the original customer copay was $59.91. However, Kmart then split the bill by submitting a claim to a third party, for $171.16, and after the third party paid out $36.91, the customer copay was reduced to $25.00. The drug acquisition cost to Kmart was $165.35. Therefore, Kmart made a profit of roughly $17.17 due to overpayment, in addition to its dispensing fee.

25.     On or about 8/23/2010, Kmart filled transaction 2102087 for Nexium for patient CM. CM is a Medicare beneficiary and Kmart submitted a claim for $200.06 to Medicare. Medicare then paid out $111.25, and the original customer copay was $59.91. However, Kmart then split the bill by submitting a claim to a third party, for $171.16, and after the third party paid out $36.91, the customer copay was reduced to $25.00. The drug acquisition cost to Kmart was $165.35. Therefore, Kmart made a profit of roughly $17.17 due to overpayment, in addition to its dispensing fee.

26.     On or about 7/18/2010, Kmart filled transaction 2096973 for Nexium for patient CM. CM is a Medicare beneficiary and Kmart submitted a claim for $200.06 to Medicare. Medicare then paid out $111.25, and the original customer copay was $59.91. However, Kmart then split the bill by submitting a claim to a third party, for $171.16, and after the third party paid out $36.91, the customer copay was reduced to $25.00. The drug acquisition cost to Kmart was $165.35. Therefore, Kmart made a profit of roughly $17.17 due to overpayment, in addition to its dispensing fee.

27.     On or about 2/21/2012, Kmart store 3655 filled transaction 2178257 for Crestor for patient RK. RK is a Medicare beneficiary and Kmart submitted a claim for $179.43 to Medicare. Medicare then paid out $105.00, and the original customer copay was $40.00. However, Kmart then split the bill by submitting a claim to a third party, for $40.00, and after the third party paid out $22.00, the customer copay was reduced to $18.00. The drug acquisition cost to Kmart was $135.49. Therefore, Kmart made a profit of roughly $9.51 due to overpayment, in addition to its dispensing fee.

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States of America ex rel. Leighr v. Sears Holdings Corp., et al.*
14

Case 4:13-cv-00988-SRB   Document 1   Filed 10/11/13   Page 14 of 60

28.     On or about 8/19/2011, Kmart filled transaction 2153002 for Nexium for patient DC. DC is a Medicare beneficiary and Kmart submitted a claim for $630.28 to Medicare. Medicare then paid out $405.74, and the original customer copay was $105.00. However, Kmart then split the bill by submitting a claim to a third party, for $510.74, and after the third party paid out $50.00, the customer copay was reduced to $55.00. The drug acquisition cost to Kmart was $496.04. Therefore, Kmart made a profit of roughly $14.70 due to overpayment, in addition to its dispensing fee.

29.     On or about 11/19/2011, Kmart filled transaction 2165458 for Nexium for customer DC. DC is a Medicare beneficiary and Kmart submitted a claim for $320.14 to Medicare. Medicare then paid out $112.69, and the original copay was $143.18. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $255.87, and after the third party paid out $50.00, the customer copay was reduced to $93.18. The acquisition cost of the drug for Kmart was $248.02. Therefore, Kmart made a profit of roughly $7.85, due to overpayment, in addition to the dispensing fee. In sum, Kmart illegally made a profit of $7.85 from DR's transaction.

30.     On or about 6/9/2012, Kmart store 3655 filled transaction 2192568 for Lipitor for patient DR. DR is a Medicare beneficiary and Kmart submitted a claim for $202.46 to Medicare. Medicare then paid out $128.55, and the original copay was $36.00. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $36.00, and after the third party paid out $32.00, the customer copay was reduced to $4.00. The acquisition cost of the drug for Kmart was $153.79. Therefore, Kmart made a profit of roughly $10.76, due to overpayment, in addition to the dispensing fee. In sum, Kmart illegally made a profit of $11.96 from DR's transaction.

31.     On or about 5/10/2012, Kmart filled transaction 2188873 for Lipitor for patient DR. DR is a Medicare beneficiary and Kmart submitted a claim for $202.46 to Medicare. Medicare then paid out $128.55, and the original copay was $36.00. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $36.00, and after the third party paid out $32.00, the customer copay was reduced to $4.00. The acquisition cost of the drug for Kmart was $153.79. Therefore, Kmart made a profit of roughly $10.76, due to overpayment, in addition to the dispensing fee. In sum, Kmart illegally made a profit of $11.96 from DR's transaction.

32.     On or about 4/9/2012, Kmart filled transaction 2184678 for Lipitor for patient DR. DR is a Medicare beneficiary and Kmart submitted a claim for $202.46 to Medicare. Medicare then paid out $128.55, and the original copay was $36.00. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $36.00, and after the third party paid out $32.00, the customer copay was reduced to $4.00. The acquisition cost of the drug for Kmart was $153.79. Therefore, Kmart made a profit of roughly $10.76, due to overpayment, in addition to the dispensing fee. In sum, Kmart illegally made a profit of $11.96 from DR's transaction.

33.     On or about 3/8/2012, Kmart filled transaction 2180346 for Lipitor for patient DR. DR is a Medicare beneficiary and Kmart submitted a claim for $202.46 to Medicare. Medicare then paid out $128.55, and the original copay was $36.00. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $36.00, and after the third party paid out $32.00, the customer copay was reduced to $4.00. The acquisition cost of the drug for Kmart was $153.79. Therefore, Kmart made a profit of roughly $10.76, due to overpayment, in addition to the dispensing fee. In sum, Kmart illegally made a profit of $11.96 from DR's transaction.

34.     On or about 2/3/2012, Kmart filled transaction 2175735 for Lipitor for patient DR. DR is a Medicare beneficiary and Kmart submitted a claim for $202.46 to Medicare.

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States of America ex rel. Leighr v. Sears Holdings Corp., et al.*
15

Case 4:13-cv-00988-SRB   Document 1   Filed 10/11/13   Page 15 of 60

Medicare then paid out $128.55, and the original copay was $36.00. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $36.00, and after the third party paid out $32.00, the customer copay was reduced to $4.00. The acquisition cost of the drug for Kmart was $153.79. Therefore, Kmart made a profit of roughly $10.76, due to overpayment, in addition to the dispensing fee. In sum, Kmart illegally made a profit of $11.96 from DR's transaction.

35.     On or about 1/3/2012, Kmart filled transaction 2171498 for Lipitor for patient DR. DR is a Medicare beneficiary and Kmart submitted a claim for $193.29 to Medicare. Medicare then paid out $128.55, and the original copay was $36.00. Kmart then fraudulently split the bill, and after the third party paid out $32.00, the customer copay was reduced to $4.00. The acquisition cost of the drug for Kmart was $146.58. Therefore, Kmart made a profit of roughly $17.97, due to overpayment, in addition to the dispensing fee. In sum, Kmart illegally made a profit of $19.17 from DR's transaction.

36.     On or about 9/13/2010, Kmart store 9336 filled transaction 1907903 for Actonel for patient LA. LA is a Medicare beneficiary and Kmart submitted a claim for $136.90 to Medicare. Medicare then paid out $54.90, and the original copay was $60.00. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $114.90, and after the third party paid out $31.00, the customer copay was reduced to $30.00. The acquisition cost of the drug for Kmart was $105.50. Therefore, Kmart made a profit of roughly $10.40

37.     On or about 8/9/2010, Kmart filled transaction 1903949 for Actonel for patient LA. LA is a Medicare beneficiary and Kmart submitted a claim for $136.90 to Medicare. Medicare then paid out $54.90, and the original copay was $60.00. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $114.90, and after the third party paid out $31.00, the customer copay was reduced to $30.00. The acquisition cost of the drug for Kmart was $105.50. Therefore, Kmart made a profit of roughly $10.40, due to overpayment.

38.     On or about 7/6/2010, Kmart filled transaction 1900385 for Actonel for patient LA. LA is a Medicare beneficiary and Kmart submitted a claim for $129.57 to Medicare. Medicare then paid out $48.55, and the original copay was $60.00. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $108.55, and after the third party paid out $31.00, the customer copay was reduced to $30.00. The acquisition cost of the drug for Kmart was $99.71. Therefore, Kmart made a profit of roughly $9.84, due to overpayment.

39.     On or about 6/11/2010, Kmart filled transaction 1898081 for Actonel for patient LA. LA is a Medicare beneficiary and Kmart submitted a claim for $129.57 to Medicare. Medicare then paid out $48.55, and the original copay was $60.00. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $108.55, and after the third party paid out $31.00, the customer copay was reduced to $30.00. The acquisition cost of the drug for Kmart was $99.71. Therefore, Kmart made a profit of roughly $9.84, due to overpayment.

40.     On or about 5/4/2010, Kmart filled transaction 1894269 for Actonel for patient LA. LA is a Medicare beneficiary and Kmart submitted a claim for $129.57 to Medicare. Medicare then paid out $48.55, and the original copay was $60.00. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $108.55, and after the third party paid out $31.00, the customer copay was reduced to $30.00. The acquisition cost of the drug for Kmart was $99.71. Therefore, Kmart made a profit of roughly $9.84, due to overpayment.

41.     On or about 3/31/2010, Kmart filled transaction 1890954 for Actonel for patient LA. LA is a Medicare beneficiary and Kmart submitted a claim for $129.57 to Medicare. Medicare then paid out $48.55, and the original copay was $60.00. Kmart then fraudulently split

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States of America ex rel. Leighr v. Sears Holdings Corp., et al.*
16

Case 4:13-cv-00988-SRB   Document 1   Filed 10/11/13   Page 16 of 60

the bill, by submitting a claim to a third party, for $108.55, and after the third party paid out $31.00, the customer copay was reduced to $30.00. The acquisition cost of the drug for Kmart was $99.71. Therefore, Kmart made a profit of roughly $9.84, due to overpayment.

42.    On or about 3/2/2010, Kmart filled transaction 1888053 for Actonel for patient LA.  LA is a Medicare beneficiary and Kmart submitted a claim for $123.75 to Medicare. Medicare then paid out $43.53, and the original copay was $60.00. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $103.53 and after the third party paid out $31.00, the customer copay was reduced to $30.00. The acquisition cost of the drug for Kmart was $95.05. Therefore, Kmart made a profit of roughly $9.48, due to overpayment.

43.    On or about 2/2/2010, Kmart filled transaction 1885315 for Actonel for patient LA. LA is a Medicare beneficiary and Kmart submitted a claim for $123.75 to Medicare. Medicare then paid out $43.53, and the original copay was $60.00. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $103.53 and after the third party paid out $31.00, the customer copay was reduced to $30.00. The acquisition cost of the drug for Kmart was $95.05. Therefore, Kmart made a profit of roughly $9.48, due to overpayment.

44.    On or about 1/2/2010, Kmart filled transaction 1882155 for Actonel for patient LA.  LA is a Medicare beneficiary and Kmart submitted a claim for $123.75 to Medicare. Medicare then paid out $43.53, and the original copay was $60.00. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $103.53 and after the third party paid out $31.00, the customer copay was reduced to $30.00. The acquisition cost of the drug for Kmart was $95.05. Therefore, Kmart made a profit of roughly $9.48, due to overpayment.

45.    On or about 11/30/2009, Kmart filled transaction 1878921 for Actonel for patient LA. LA is a Medicare beneficiary and Kmart submitted a claim for $123.75 to Medicare. Medicare then paid out $43.53, and the original copay was $50.00. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $103.53 and after the third party paid out $31.00, the customer copay was reduced to $20.00. The acquisition cost of the drug for Kmart was $95.05. Therefore, Kmart made a profit of roughly $0.52, due to overpayment.

46.    On or about 11/3/2009, Kmart filled transaction 1876315 for Actonel for patient LA. LA is a Medicare beneficiary and Kmart submitted a claim for $123.75 to Medicare. Medicare then paid out $43.53, and the original copay was $50.00. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $103.53 and after the third party paid out $31.00, the customer copay was reduced to $20.00. The acquisition cost of the drug for Kmart was $95.05. Therefore, Kmart made a profit of roughly $0.52, due to overpayment.

47.    On or about 10/1/2009, Kmart filled transaction 1872931 for Actonel for patient LA.  LA is a Medicare beneficiary and Kmart submitted a claim for $114.66 to Medicare. Medicare then paid out $45.68, and the original copay was $50.00. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $95.68 and after the third party paid out $31.00, the customer copay was reduced to $20.00. The acquisition cost of the drug for Kmart was $87.77. Therefore, Kmart made a profit of roughly $8.91, due to overpayment.

48.    On or about 8/31/2009, Kmart filled transaction 1870222 for Actonel for patient LA. LA is a Medicare beneficiary and Kmart submitted a claim for $119.23 to Medicare. Medicare then paid out $45.81, and the original copay was $50.00. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $95.81 and after the third party paid out $31.00, the customer copay was reduced to $20.00. The acquisition cost of the drug for Kmart was $87.77. Therefore, Kmart made a profit of roughly $9.04, due to overpayment.

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States of America ex rel. Leighr v. Sears Holdings Corp., et al.*
17

Case 4:13-cv-00988-SRB   Document 1   Filed 10/11/13   Page 17 of 60

49.     On or about 7/30/2009, Kmart store 3239 filled transaction 1866920 for Actonel for patient LA. LA is a Medicare beneficiary and Kmart submitted a claim for $119.23 to Medicare. Medicare then paid out $45.81, and the original copay was $50.00. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $95.81 and after the third party paid out $31.00, the customer copay was reduced to $20.00. The acquisition cost of the drug for Kmart was $87.77. Therefore, Kmart made a profit of roughly $9.04 due to overpayment.

50.     On or about 9/26/2011, Kmart filled transaction 2469170 for Lipitor for patient PR. PR is a Medicare beneficiary and Kmart submitted a claim for $184.97 to Medicare. Medicare then paid out $114.72, and the original copay was $45.00. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $159.72 and after the third party paid out $15.00, the customer copay was reduced to $30.00. The acquisition cost of the drug for Kmart was $146.58. Therefore, Kmart made a profit of roughly $13.14, due to overpayment.

51.     On or about 8/30/2011, Kmart filled transaction 2465984 for Lipitor for patient PR. PR is a Medicare beneficiary and Kmart submitted a claim for $184.97 to Medicare. Medicare then paid out $114.72, and the original copay was $45.00. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $159.72 and after the third party paid out $15.00, the customer copay was reduced to $30.00. The acquisition cost of the drug for Kmart was $146.58. Therefore, Kmart made a profit of roughly $13.14, due to overpayment.

52.     On or about 8/2/2011, Kmart filled transaction 2462827 for Lipitor for patient PR. PR is a Medicare beneficiary and Kmart submitted a claim for $184.97 to Medicare. Medicare then paid out $114.72, and the original copay was $45.00. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $159.72 and after the third party paid out $15.00, the customer copay was reduced to $30.00. The acquisition cost of the drug for Kmart was $146.58. Therefore, Kmart made a profit of roughly $13.14, due to overpayment.

53.     On or about 2/28/2011, Kmart filled transaction 2444239 for Lipitor for patient PR. PR is a Medicare beneficiary and Kmart submitted a claim for $150.75 to Medicare. Medicare then paid out $105.75, and the original copay was $45.00. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $150.75 and after the third party paid out $15.00, the customer copay was reduced to $30.00. The acquisition cost of the drug for Kmart was $138.28. Therefore, Kmart made a profit of roughly $12.47, due to overpayment.

54.     On or about 2/1/2011, Kmart filled transaction 2441014 for Lipitor for patient PR. PR is a Medicare beneficiary and Kmart submitted a claim for $154.17 to Medicare. Medicare then paid out $105.75, and the original copay was $45.00. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $150.75 and after the third party paid out $15.00, the customer copay was reduced to $30.00. The acquisition cost of the drug for Kmart was $138.28. Therefore, Kmart made a profit of roughly $12.47, due to overpayment.

55.     On or about 1/4/2011, Kmart store 3239 filled transaction 2437666 for Lipitor for patient PR. PR is a Medicare beneficiary and Kmart submitted a claim for $137.86 to Medicare. Medicare then paid out $105.75, and the original copay was $45.00. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $150.75 and after the third party paid out $15, the customer copay was reduced to $30.00. The acquisition cost of the drug for Kmart was $123.47. Therefore, Kmart made a profit of roughly $27.28, due to overpayment.

56.     On or about 6/19/2009, Kmart filled transaction 2365580 for Advair for patient BW. BW is a Medicare beneficiary and Kmart submitted a claim for $318.01 to Medicare.

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States of America ex rel. Leighr v. Sears Holdings Corp., et al.*

Medicare then paid out $230.80, and the original copay was $30.00. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $260.80 and after the third party paid out $150.75, the customer copay was reduced to $20.00. The acquisition cost of the drug for Kmart was $240.49. Therefore, Kmart made a profit of roughly $21.31, due to overpayment.

57. On or about 5/5/2009, Kmart store 3329 filled transaction 2359526 for Advair for patient BW. BW is a Medicare beneficiary and Kmart submitted a claim for $318.01 to Medicare. Medicare then paid out $230.80, and the original copay was $30.00. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $260.80 and after the third party paid out $150.75, the customer copay was reduced to $20.00. The acquisition cost of the drug for Kmart was $240.49. Therefore, Kmart made a profit of roughly $21.31, due to overpayment.

58. On or about 6/19/2009, Kmart filled transaction 2365580 for Advair for patient BW. BW is a Medicare beneficiary and Kmart submitted a claim for $318.01 to Medicare. Medicare then paid out $230.80, and the original copay was $30.00. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $260.80 and after the third party paid out $150.75, the customer copay was reduced to $20.00. The acquisition cost of the drug for Kmart was $240.49. Therefore, Kmart made a profit of roughly $21.31, due to overpayment.

59. On or about 1/16/2012, Kmart store 4157 filled transaction 1774792 for Lipitor for patient ORC. ORC is a Medicare beneficiary and Kmart submitted a claim for $289.69 to Medicare. Medicare then paid out $204.22, and the original copay was $42.00. Kmart then fraudulently split the bill, by submitting a claim to a third party, and after the third party paid out $38.00, the customer copay was reduced to $4.00. The acquisition cost of the drug for Kmart was $230.87. Therefore, Kmart made a profit of roughly $15.35, in addition to the dispensing fee. In sum, Kmart illegally made a profit of $16.55 from DR's transaction.

60. On or about 12/15/2011, Kmart filled transaction 1772420 for Lipitor for patient ORC. ORC is a Medicare beneficiary and Kmart submitted a claim for $284.94 to Medicare. Medicare then paid out $194.55, and the original copay was $40.00. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $234.55 and after the third party paid out $36.00, the customer copay was reduced to $4.00. The acquisition cost of the drug for Kmart was $219.87. Therefore, Kmart made a profit of roughly $14.68, due to overpayment, in addition to the dispensing fee. In sum, Kmart illegally made a profit of $15.88 from DR's transaction.

61. On or about 11/17/2011, Kmart filled transaction 1770896 for Lipitor for patient ORC. ORC is a Medicare beneficiary and Kmart submitted a claim for $284.94 to Medicare. Medicare then paid out $194.55, and the original copay was $40.00. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $234.55 and after the third party paid out $36.00, the customer copay was reduced to $4.00. The acquisition cost of the drug for Kmart was $219.87. Therefore, Kmart made a profit of roughly $14.68, due to overpayment, in addition to the dispensing fee. In sum, Kmart illegally made a profit of $15.88 from DR's transaction.

62. On or about 9/6/2011, Kmart filled transaction 1766761 for Lipitor for patient ORC. ORC is a Medicare beneficiary and Kmart submitted a claim for $193.29 to Medicare. Medicare then paid out $116.77, and the original copay was $40.00. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $156.77 and after the third party paid out $15, the customer copay was reduced to $25.00. The acquisition cost of the drug for Kmart was $146.58. Therefore, Kmart made a profit of roughly $10.19, due to overpayment.

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States of America ex rel. Leighr v. Sears Holdings Corp., et al.*
19

Case 4:13-cv-00988-SRB   Document 1   Filed 10/11/13   Page 19 of 60

63.     On or about 8/2/2011, Kmart filled transaction 1764837 for Lipitor for patient ORC. ORC is a Medicare beneficiary and Kmart submitted a claim for $193.29 to Medicare. Medicare then paid out $116.77, and the original copay was $40.00. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $156.77 and after the third party paid out $15, the customer copay was reduced to $25.00. The acquisition cost of the drug for Kmart was $146.58. Therefore, Kmart made a profit of roughly $10.19, due to overpayment.

64.     On or about 7/1/2011, Kmart filled transaction 1763158 for Lipitor for patient ORC. ORC is a Medicare beneficiary and Kmart submitted a claim for $177.92 to Medicare. Medicare then paid out $107.96, and the original copay was $40.00. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $147.96 and after the third party paid out $15, the customer copay was reduced to $25.00. The acquisition cost of the drug for Kmart was $138.28. Therefore, Kmart made a profit of roughly $9.68, due to overpayment.

65.     On or about 5/31/2011, Kmart filled transaction 1761242 for Lipitor for patient ORC. ORC is a Medicare beneficiary and Kmart submitted a claim for $177.92 to Medicare. Medicare then paid out $107.96, and the original copay was $40.00. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $147.96 and after the third party paid out $15, the customer copay was reduced to $25.00. The acquisition cost of the drug for Kmart was $138.28. Therefore, Kmart made a profit of roughly $9.68, due to overpayment.

66.     On or about 5/2/2011, Kmart filled transaction 1759607 for Lipitor for patient ORC. ORC is a Medicare beneficiary and Kmart submitted a claim for $177.92 to Medicare. Medicare then paid out $107.96, and the original copay was $40.00. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $147.96 and after the third party paid out $15, the customer copay was reduced to $25.00. The acquisition cost of the drug for Kmart was $138.28. Therefore, Kmart made a profit of roughly $9.68, due to overpayment.

67.     On or about 3/21/2011, Kmart filled transaction 1757024 for Lipitor for patient ORC. ORC is a Medicare beneficiary and Kmart submitted a claim for $177.92 to Medicare. Medicare then paid out $107.96, and the original copay was $40.00. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $147.96 and after the third party paid out $15, the customer copay was reduced to $25.00. The acquisition cost of the drug for Kmart was $138.28. Therefore, Kmart made a profit of roughly $9.68, due to overpayment.

68.     On or about 1/25/2011, Kmart filled transaction 1753489 for Lipitor for patient ORC. ORC is a Medicare beneficiary and Kmart submitted a claim for $177.92 to Medicare. Medicare then paid out $107.96, and the original copay was $40.00. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $147.96 and after the third party paid out $15, the customer copay was reduced to $25.00. The acquisition cost of the drug for Kmart was $138.28. Therefore, Kmart made a profit of roughly $9.68, due to overpayment.

69.     On or about 12/27/2010, Kmart filled transaction 1751519 for Lipitor for patient ORC. ORC is a Medicare beneficiary and Kmart submitted a claim for $159.39 to Medicare. Medicare then paid out $92.24, and the original copay was $40.00. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $132.24 and after the third party paid out $15, the customer copay was reduced to $25.00. The acquisition cost of the drug for Kmart was $123.47. Therefore, Kmart made a profit of roughly $8.77, due to overpayment.

70.     On or about 11/29/2010, Kmart filled transaction 1749801 for Lipitor for patient ORC. ORC is a Medicare beneficiary and Kmart submitted a claim for $159.39 to Medicare. Medicare then paid out $92.24, and the original copay was $40.00. Kmart then fraudulently split

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States of America ex rel. Leighr v. Sears Holdings Corp., et al.*
20

Case 4:13-cv-00988-SRB   Document 1   Filed 10/11/13   Page 20 of 60

the bill, by submitting a claim to a third party, for $132.24 and after the third party paid out $15, the customer copay was reduced to $25.00. The acquisition cost of the drug for Kmart was $123.47. Therefore, Kmart made a profit of roughly $8.77, due to overpayment.

71.     On or about 8/25/2011, Kmart store 4157 filled transaction 1766158 for Lipitor for patient LK. LK is a Medicare beneficiary and Kmart submitted a claim for $101.65 to Medicare. Medicare then paid out $35.49, and the original copay was $45.00. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $80.49 and after the third party paid out $15, the customer copay was reduced to $30.00. The acquisition cost of the drug for Kmart was $73.29. Therefore, Kmart made a profit of roughly $7.20, due to overpayment.

72.     On or about 7/25/2011, Kmart filled transaction 1764376 for Lipitor for patient LK. LK is a Medicare beneficiary and Kmart submitted a claim for $101.65 to Medicare. Medicare then paid out $35.49, and the original copay was $45.00. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $80.49 and after the third party paid out $15, the customer copay was reduced to $30.00. The acquisition cost of the drug for Kmart was $73.29. Therefore, Kmart made a profit of roughly $7.20, due to overpayment.

73.     On or about 6/20/2011, Kmart filled transaction 1762491 for Lipitor for patient LK. LK is a Medicare beneficiary and Kmart submitted a claim for $91.46 to Medicare. Medicare then paid out $31.00, and the original copay was $45.00. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $76.00 and after the third party paid out $15, the customer copay was reduced to $30.00. The acquisition cost of the drug for Kmart was $69.14. Therefore, Kmart made a profit of roughly $6.86, due to overpayment.

74.     On or about 5/19/2011, Kmart filled transaction 1760720 for Lipitor for patient LK. LK is a Medicare beneficiary and Kmart submitted a claim for $91.46 to Medicare. Medicare then paid out $31.00, and the original copay was $45.00. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $76.00 and after the third party paid out $15, the customer copay was reduced to $30.00. The acquisition cost of the drug for Kmart was $69.14. Therefore, Kmart made a profit of roughly $6.86, due to overpayment.

75.     On or about 4/19/2011, Kmart filled transaction 1758885 for Lipitor for patient LK. LK is a Medicare beneficiary and Kmart submitted a claim for $91.46 to Medicare. Medicare then paid out $31.00, and the original copay was $45.00. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $76.00 and after the third party paid out $15, the customer copay was reduced to $30.00. The acquisition cost of the drug for Kmart was $69.14. Therefore, Kmart made a profit of roughly $6.86, due to overpayment.

76.     On or about 3/22/2011, Kmart store 4157 filled transaction 1757117 for Lipitor for patient LK. LK is a Medicare beneficiary and Kmart submitted a claim for $91.46 to Medicare. Medicare then paid out $31.00, and the original copay was $45.00. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $76.00 and after the third party paid out $15, the customer copay was reduced to $30.00. The acquisition cost of the drug for Kmart was $69.14. Therefore, Kmart made a profit of roughly $6.86, due to overpayment.

77.     On or about 9/26/2011, Kmart store 4157 filled transaction 1767886 for Lipitor for patient LK. LK is a Medicare beneficiary and Kmart submitted a claim for $101.65 to Medicare. Medicare then paid out $35.49, and the original copay was $45.00. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $80.49 and after the third party paid out $15, the customer copay was reduced to $30.00. The acquisition cost of the drug for Kmart was $73.29. Therefore, Kmart made a profit of roughly $7.20, due to overpayment.

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States of America ex rel. Leighr v. Sears Holdings Corp., et al.*
21

Case 4:13-cv-00988-SRB   Document 1   Filed 10/11/13   Page 21 of 60

78.     On or about 7/19/2013, Kmart Store 4427 filled transaction 2102983 for Androgel for patient PE. PE is a Medicare beneficiary and Kmart submitted a claim for $442.40 to Medicare. Medicare then paid out $185.58, and the original copay was $167.91. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $167.91, and after the third party paid out $50.00, the customer copay was reduced to $117.91. The acquisition cost of the drug for Kmart was $329.55. Therefore, Kmart made a profit of roughly $23.94, due to overpayment, in addition to the dispensing fee. In sum, Kmart illegally made a profit of $25.04.

79.     On or about 6/19/2013, Kmart Store 4427 filled transaction 2100053 for Androgel for patient PE. PE is a Medicare beneficiary and Kmart submitted a claim for $442.40 to Medicare. Medicare then paid out $185.58, and the original copay was $167.91. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $167.91, and after the third party paid out $50.00, the customer copay was reduced to $117.91. The acquisition cost of the drug for Kmart was $329.55. Therefore, Kmart made a profit of roughly $23.94, due to overpayment, in addition to the dispensing fee. In sum, Kmart illegally made a profit of $25.04. On or about 5/20/2013, Kmart Store 4427 filled transaction 2096894 for Androgel for patient PE. PE is a Medicare beneficiary and Kmart submitted a claim for $442.40 to Medicare. Medicare then paid out $185.58, and the original copay was $167.91. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $167.91, and after the third party paid out $50.00, the customer copay was reduced to $117.91. The acquisition cost of the drug for Kmart was $329.55. Therefore, Kmart made a profit of roughly $23.94, due to overpayment, in addition to the dispensing fee. In sum, Kmart illegally made a profit of $25.04.

80.     On or about 4/17/2013, Kmart Store 4427 filled transaction 2093762 for Androgel for patient PE. PE is a Medicare beneficiary and Kmart submitted a claim for $442.40 to Medicare. Medicare then paid out $189.60, and the original copay was $164.35. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $164.35, and after the third party paid out $50.00, the customer copay was reduced to $114.35. The acquisition cost of the drug for Kmart was $329.55. Therefore, Kmart made a profit of roughly $24.40, due to overpayment, in addition to the dispensing fee. In sum, Kmart illegally made a profit of $25.55.

81.     On or about 3/17/2013, Kmart Store 4427 filled transaction 2090241 for Androgel for patient PE. PE is a Medicare beneficiary and Kmart submitted a claim for $385.25 to Medicare. Medicare then paid out $308.95, and the original copay was $45.00. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $45.00, and after the third party paid out $35.00, the customer copay was reduced to $10.00. The acquisition cost of the drug for Kmart was $299.86. Therefore, Kmart made a profit of roughly $54.09, due to overpayment, in addition to the dispensing fee. In sum, Kmart illegally made a profit of $55.24.

82.     On or about 1/27/2013, Kmart Store 4427 filled transaction 2085121 for Androgel for patient PE. PE is a Medicare beneficiary and Kmart submitted a claim for $385.25 to Medicare. Medicare then paid out $308.95, and the original copay was $45.00. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $45.00, and after the third party paid out $35.00, the customer copay was reduced to $10.00. The acquisition cost of the drug for Kmart was $299.86. Therefore, Kmart made a profit of roughly $54.09, due to overpayment, in addition to the dispensing fee. In sum, Kmart illegally made a profit of $55.24.

83.     On or about 1/2/2013, Kmart Store 4427 filled transaction 2082816 for Androgel for patient PE. PE is a Medicare beneficiary and Kmart submitted a claim for $385.25 to Medicare. Medicare then paid out $277.17, and the original copay was $45.00. Kmart then

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States of America ex rel. Leighr v. Sears Holdings Corp., et al.*
22

Case 4:13-cv-00988-SRB   Document 1   Filed 10/11/13   Page 22 of 60

fraudulently split the bill, by submitting a claim to a third party, for $45.00, and after the third party paid $35.00, the customer copay was reduced to $10.00. The acquisition cost of the drug for Kmart was $299.86. Therefore, Kmart made a profit of roughly $22.31, due to overpayment, in addition to the dispensing fee. In sum, Kmart illegally made a profit of $23.46.

84.	On or about 11/15/2012, Kmart Store 4427 filled transaction 2077846 for Androgel for patient PE. PE is a Medicare beneficiary and Kmart submitted a claim for $385.25 to Medicare. Medicare then paid out $277.64, and the original copay was $45.00. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $45.00, and after the third party paid out $35.00, the customer copay was reduced to $10.00. The acquisition cost of the drug for Kmart was $299.86. Therefore, Kmart made a profit of roughly $22.78, due to overpayment, in addition to the dispensing fee. In sum, Kmart illegally made a profit of $24.03.

85.	On or about 07/16/2013, Kmart Store 4427 filled transaction 2102586 for Onglyza for patient PE. PE is a Medicare beneficiary and Kmart submitted a claim for $305.13 to Medicare. Medicare then paid out $132.97, and the original copay was $120.31. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $120.31, and after the third party paid out $101.00, the customer copay was reduced to $20.31. The acquisition cost of the drug for Kmart was $235.84. Therefore, Kmart made a profit of roughly $18.14, due to overpayment, in addition to the dispensing fee. In sum, Kmart illegally made a profit of $19.24.

86.	On or about 06/14/2013, Kmart Store 4427 filled transaction 2099534 for Onglyza for patient PE. PE is a Medicare beneficiary and Kmart submitted a claim for $305.13 to Medicare. Medicare then paid out $132.97, and the original copay was $120.31. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $120.31, and after the third party paid out $101.00, the customer copay was reduced to $20.31. The acquisition cost of the drug for Kmart was $235.84. Therefore, Kmart made a profit of roughly $18.14, due to overpayment, in addition to the dispensing fee. In sum, Kmart illegally made a profit of $19.24.

87.	On or about 05/16/2013, Kmart Store 4427 filled transaction 2096503 for Onglyza for patient PE. PE is a Medicare beneficiary and Kmart submitted a claim for $305.13 to Medicare. Medicare then paid out $132.97, and the original copay was $120.31. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $120.31, and after the third party paid out $101.00, the customer copay was reduced to $20.31. The acquisition cost of the drug for Kmart was $235.84. Therefore, Kmart made a profit of roughly $18.14, due to overpayment, in addition to the dispensing fee. In sum, Kmart illegally made a profit of $19.24.

88.	On or about 04/16/2013, Kmart Store 4427 filled transaction 2063403 for Onglyza for patient PE. PE is a Medicare beneficiary and Kmart submitted a claim for $305.13 to Medicare. Medicare then paid out $208.63, and the original copay was $45.00. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $45.00, and after the third party paid $36.00, the customer copay was reduced to $10.00. The acquisition cost of the drug for Kmart was $235.84. Therefore, Kmart made a profit of roughly $18.79, due to overpayment, in addition to the dispensing fee. In sum, Kmart illegally made a profit of $19.94.

89.	On or about 03/14/2013, Kmart Store 4427 filled transaction 2089982 for Onglyza for patient PE. PE is a Medicare beneficiary and Kmart submitted a claim for $305.13 to Medicare. Medicare then paid out $208.63, and the original copay was $45.00. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $45.00, and after the third party paid out $36.00, the customer copay was reduced to $10.00. The acquisition cost of the

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States of America ex rel. Leighr v. Sears Holdings Corp., et al.*
23

Case 4:13-cv-00988-SRB   Document 1   Filed 10/11/13   Page 23 of 60

drug for Kmart was $235.84. Therefore, Kmart made a profit of roughly $18.79, due to overpayment, in addition to the dispensing fee. In sum, Kmart illegally made a profit of $19.94.

90.     On or about 02/08/2013, Kmart Store 4427 filled transaction 2086400 for Onglyza for patient PE. PE is a Medicare beneficiary and Kmart submitted a claim for $305.13 to Medicare. Medicare then paid out $208.63, and the original copay was $45.00. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $45.00, and after the third party paid out $36.00, the customer copay was reduced to $10.00. The acquisition cost of the drug for Kmart was $235.84. Therefore, Kmart made a profit of roughly $18.79, due to overpayment, in addition to the dispensing fee. In sum, Kmart illegally made a profit of $19.94.

91.     On or about 01/08/2013, Kmart Store 4427 filled transaction 2082943 for Onglyza for patient PE. PE is a Medicare beneficiary and Kmart submitted a claim for $278.55 to Medicare. Medicare then paid out $185.89, and the original copay was $45.00. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $45.00, and after the third party paid out $36.00, the customer copay was reduced to $10.00. The acquisition cost of the drug for Kmart was $214.60. Therefore, Kmart made a profit of roughly $17.29, due to overpayment, in addition to the dispensing fee. In sum, Kmart illegally made a profit of $18.44.

92.     On or about 12/11/2012, Kmart Store 4427 filled transaction 2079962 for Onglyza for patient PE. PE is a Medicare beneficiary and Kmart submitted a claim for $278.55 to Medicare. Medicare then paid out $185.89, and the original copay was $45.00. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $45.00, and after the third party paid out $36.00, the customer copay was reduced to $10.00. The acquisition cost of the drug for Kmart was $214.60. Therefore, Kmart made a profit of roughly $17.29, due to overpayment, in addition to the dispensing fee. In sum, Kmart illegally made a profit of $18.44.

93.     On or about 11/12/2012, Kmart Store 4427 filled transaction 2076842 for Onglyza for patient PE. PE is a Medicare beneficiary and Kmart submitted a claim for $278.55 to Medicare. Medicare then paid out $186.26, and the original copay was $45.00. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $45.00, and after the third party paid out $36.00, the customer copay was reduced to $10.00. The acquisition cost of the drug for Kmart was $214.60. Therefore, Kmart made a profit of roughly $17.66, due to overpayment, in addition to the dispensing fee. In sum, Kmart illegally made a profit of $18.91.

94.     On or about 10/11/2012, Kmart Store 4427 filled transaction 2073662 for Onglyza for patient PE. PE is a Medicare beneficiary and Kmart submitted a claim for $278.55 to Medicare. Medicare then paid out $186.26, and the original copay was $45.00. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $45.00, and after the third party paid out $36.00, the customer copay was reduced to $10.00. The acquisition cost of the drug for Kmart was $214.60. Therefore, Kmart made a profit of roughly $17.66, due to overpayment, in addition to the dispensing fee. In sum, Kmart illegally made a profit of $18.91.

95.     On or about 5/16/2013, Kmart Store 4427 filled transaction 2096478 for Diovan for patient PE. PE is a Medicare beneficiary and Kmart submitted a claim for $154.55 to Medicare. Medicare then paid out $65.42, and the original copay was $59.19. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $59.19, and after the third party paid out $55.16, the customer copay was reduced to $4.00. The acquisition cost of the drug for Kmart was $115.51. Therefore, Kmart made a profit of roughly $9.07, due to overpayment, in addition to the dispensing fee. In sum, Kmart illegally made a profit of $12.17.

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States of America ex rel. Leighr v. Sears Holdings Corp., et al.*
24

Case 4:13-cv-00988-SRB   Document 1   Filed 10/11/13   Page 24 of 60

96.     On or about 4/15/2013, Kmart Store 4427 filled transaction 2093223 for Diovan for patient PE. PE is a Medicare beneficiary and Kmart submitted a claim for $154.55 to Medicare. Medicare then paid out $79.80, and the original copay was $45.00. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $45.00, and after the third party paid out $41.00, the customer copay was reduced to $4.00. The acquisition cost of the drug for Kmart was $115.51. Therefore, Kmart made a profit of roughly $9.29, due to overpayment, in addition to the dispensing fee. In sum, Kmart illegally made a profit of $12.44.

97.     On or about 3/14/2013, Kmart Store 4427 filled transaction 2089984 for Diovan for patient PE. PE is a Medicare beneficiary and Kmart submitted a claim for $154.55 to Medicare. Medicare then paid out $79.80, and the original copay was $45.00. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $45.00, and after the third party paid out $41.00, the customer copay was reduced to $4.00. The acquisition cost of the drug for Kmart was $115.51. Therefore, Kmart made a profit of roughly $9.29, due to overpayment, in addition to the dispensing fee. In sum, Kmart illegally made a profit of $12.44.

98.     On or about 2/8/2013, Kmart Store 4427 filled transaction 2086403 for Diovan for patient PE. PE is a Medicare beneficiary and Kmart submitted a claim for $154.55 to Medicare. Medicare then paid out $79.80, and the original copay was $45.00. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $45.00, and after the third party paid out $41.00, the customer copay was reduced to $4.00. The acquisition cost of the drug for Kmart was $115.51. Therefore, Kmart made a profit of roughly $9.29, due to overpayment, in addition to the dispensing fee. In sum, Kmart illegally made a profit of $12.44.

99.     On or about 1/8/2013, Kmart Store 4427 filled transaction 2083456 for Diovan for patient PE. PE is a Medicare beneficiary and Kmart submitted a claim for $135.80 to Medicare. Medicare then paid out $63.77, and the original copay was $45.00. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $45.00, and after the third party paid out $41.00, the customer copay was reduced to $4.00. The acquisition cost of the drug for Kmart was $100.53. Therefore, Kmart made a profit of roughly $8.24, due to overpayment, in addition to the dispensing fee. In sum, Kmart illegally made a profit of $11.39.

100.    On or about 12/11/2012, Kmart Store 4427 filled transaction 2080165 for Diovan for patient PE. PE is a Medicare beneficiary and Kmart submitted a claim for $135.80 to Medicare. Medicare then paid out $63.77, and the original copay was $45.00. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $45.00, and after the third party paid out $41.00, the customer copay was reduced to $4.00. The acquisition cost of the drug for Kmart was $100.53. Therefore, Kmart made a profit of roughly $8.24, due to overpayment, in addition to the dispensing fee. In sum, Kmart illegally made a profit of $11.39.

101.    On or about 11/12/2012, Kmart Store 4427 filled transaction 2076832 for Diovan for patient PE. PE is a Medicare beneficiary and Kmart submitted a claim for $135.80 to Medicare. Medicare then paid out $63.99, and the original copay was $45.00. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $45.00, and after the third party paid out $41.00, the customer copay was reduced to $4.00. The acquisition cost of the drug for Kmart was $100.53. Therefore, Kmart made a profit of roughly $8.46, due to overpayment, in addition to the dispensing fee. In sum, Kmart illegally made a profit of $11.71.

102.    On or about 10/10/2012, Kmart Store 4427 filled transaction 2073517 for Diovan for patient PE. PE is a Medicare beneficiary and Kmart submitted a claim for $135.80 to Medicare. Medicare then paid out $63.99, and the original copay was $45.00. Kmart then

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States of America ex rel. Leighr v. Sears Holdings Corp., et al.*
25

Case 4:13-cv-00988-SRB   Document 1   Filed 10/11/13   Page 25 of 60

fraudulently split the bill, by submitting a claim to a third party, for $45.00, and after the third party paid out $41.00, the customer copay was reduced to $4.00. The acquisition cost of the drug for Kmart was $100.53. Therefore, Kmart made a profit of roughly $8.46, due to overpayment, in addition to the dispensing fee. In sum, Kmart illegally made a profit of $11.71.

103.    On or about 2/16/2012, Kmart Store 9336 filled transaction 1955604 for Vigomax for patient RR. RR is a Medicare beneficiary and Kmart submitted a claim for $112.12 to Medicare. Medicare then paid out $24.17, and the original copay was $65.00. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $65.00, and after the third party paid out $45.00, the customer copay was reduced to $20.00. The acquisition cost of the drug for Kmart was $81.66. Therefore, Kmart made a profit of roughly $7.51, due to overpayment, in addition to the dispensing fee. In sum, Kmart illegally made a profit of $10.51.

104.    On or about 9/13/2010, Kmart Store 9336 filled transaction 1907903 for Actonel for patient LA. LA is a Medicare beneficiary and Kmart submitted a claim for $136.92 to Medicare. Medicare then paid out $54.90, and the original copay was $60.00. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $114.90, and after the third party paid out $31.00, the customer copay was reduced to $30.00. The acquisition cost of the drug for Kmart was $105.50. Therefore, Kmart made a profit of roughly $10.40, due to overpayment.

105.    On or about 8/9/2010, Kmart Store 9336 filled transaction 1903949 for Actonel for patient LA. LA is a Medicare beneficiary and Kmart submitted a claim for $136.92 to Medicare. Medicare then paid out $54.90, and the original copay was $60.00. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $114.90, and after the third party paid out $31.00, the customer copay was reduced to $30.00. The acquisition cost of the drug for Kmart was $105.50. Therefore, Kmart made a profit of roughly $10.40, due to overpayment.

106.    On or about 7/5/2010, Kmart Store 9336 filled transaction 1900385 for Actonel for patient LA. LA is a Medicare beneficiary and Kmart submitted a claim for $129.57 to Medicare. Medicare then paid out $48.55, and the original copay was $60.00. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $108.55, and after the third party paid out $31.00, the customer copay was reduced to $30.00. The acquisition cost of the drug for Kmart was $99.71. Therefore, Kmart made a profit of roughly $9.84, due to overpayment.

107.    On or about 6/11/2010, Kmart Store 9336 filled transaction 1898081 for Actonel for patient LA. LA is a Medicare beneficiary and Kmart submitted a claim for $129.57 to Medicare. Medicare then paid out $48.55, and the original copay was $60.00. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $108.55, and after the third party paid out $31.00, the customer copay was reduced to $30.00. The acquisition cost of the drug for Kmart was $99.71. Therefore, Kmart made a profit of roughly $9.84, due to overpayment.

108.    On or about 5/4/2010, Kmart Store 9336 filled transaction 1894269 for Actonel for patient LA. LA is a Medicare beneficiary and Kmart submitted a claim for $129.57 to Medicare. Medicare then paid out $48.55, and the original copay was $60.00. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $108.55, and after the third party paid out $31.00, the customer copay was reduced to $30.00. The acquisition cost of the

Case 4:13-cv-00988-SRB   Document 1   Filed 10/11/13   Page 26 of 60

drug for Kmart was $99.71. Therefore, Kmart made a profit of roughly $9.84, due to overpayment.

109.　On or about 3/31/2010, Kmart Store 9336 filled transaction 1890954 for Actonel for patient LA. LA is a Medicare beneficiary and Kmart submitted a claim for $129.57 to Medicare. Medicare then paid out $48.55, and the original copay was $60.00. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $108.55, and after the third party paid out $31.00, the customer copay was reduced to $30.00. The acquisition cost of the drug for Kmart was $99.71. Therefore, Kmart made a profit of roughly $9.84, due to overpayment.

110.　On or about 3/2/2010, Kmart Store 9336 filled transaction 1888053 for Actonel for patient LA. LA is a Medicare beneficiary and Kmart submitted a claim for $123.75 to Medicare. Medicare then paid out $43.53, and the original copay was $60.00. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $103.53, and after the third party paid out $31.00, the customer copay was reduced to $30.00. The acquisition cost of the drug for Kmart was $95.05. Therefore, Kmart made a profit of roughly $9.48, due to overpayment.

111.　On or about 11/3/2009, Kmart Store 9336 filled transaction 1876315 for Actonel for patient LA. LA is a Medicare beneficiary and Kmart submitted a claim for $123.75 to Medicare. Medicare then paid out $53.53, and the original copay was $50.00. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $103.53, and after the third party paid out $31.00, the customer copay was reduced to $20.00. The acquisition cost of the drug for Kmart was $95.05. Therefore, Kmart made a profit of roughly $9.48, due to overpayment.

112.　On or about 10/1/2009, Kmart Store 9336 filled transaction 1872931 for Actonel for patient LA. LA is a Medicare beneficiary and Kmart submitted a claim for $114.66 to Medicare. Medicare then paid out $45.68, and the original copay was $50.00. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $95.68, and after the third party paid out $31.00, the customer copay was reduced to $20.00. The acquisition cost of the drug for Kmart was $87.77. Therefore, Kmart made a profit of roughly $8.91, due to overpayment.

113.　On or about 8/31/2009, Kmart Store 9336 filled transaction 1870222 for Actonel for patient LA. LA is a Medicare beneficiary and Kmart submitted a claim for $119.23 to Medicare. Medicare then paid out $45.81, and the original copay was $50.00. Kmart then fraudulently split the bill, by submitting a claim to a third party, for 95.81, and after the third party paid out $31.00, the customer copay was reduced to $20.00. The acquisition cost of the drug for Kmart was $87.77. Therefore, Kmart made a profit of roughly $9.04, due to overpayment.

114.　On or about 7/30/2009, Kmart Store 9336 filled transaction 1866920 for Actonel for patient LA. LA is a Medicare beneficiary and Kmart submitted a claim for $119.23 to Medicare. Medicare then paid out $45.81, and the original copay was $50.00. Kmart then fraudulently split the bill, by submitting a claim to a third party, for 95.81, and after the third party paid out $31.00, the customer copay was reduced to $20.00. The acquisition cost of the drug for Kmart was $87.77. Therefore, Kmart made a profit of roughly $9.04, due to overpayment.

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States of America ex rel. Leighr v. Sears Holdings Corp., et al.*
27

Case 4:13-cv-00988-SRB   Document 1   Filed 10/11/13   Page 27 of 60

115.    On or about 6/17/2013, Kmart Store 4220 filled transaction 2787470 for Crestor for patient MT. MT is a federal employee and a GHP beneficiary and Kmart submitted a claim for $203.96 to the Government. The Government then paid out $125.09, and the original copay was $40.00. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $40.00, and after the third party paid out $22.00, the customer copay was reduced to $18.00. The acquisition cost of the drug for Kmart was $154.99. Therefore, Kmart made a profit of roughly $10.10, due to overpayment, in addition to the dispensing fee. In sum, Kmart illegally made a profit of $11.10.

116.    On or about 7/5/2013, Kmart Store 4220 filled transaction 2790360 for Crestor for patient RC. RC is a Medicare beneficiary and Kmart submitted a claim for $206.97 to Medicare. Medicare then paid out $140.61, and the original copay was $35.12. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $35.15, and after the third party paid out $17.15, the customer copay was reduced to $18.00. The acquisition cost of the drug for Kmart was $164.29. Therefore, Kmart made a profit of roughly $11.47, due to overpayment, in addition to the dispensing fee. In sum, Kmart illegally made a profit of $12.47.

117.    On or about 6/5/2013, Kmart Store 4220 filled transaction 2785671 for Crestor for patient RC. RC is a Medicare beneficiary and Kmart submitted a claim for $194.97 to Medicare. Medicare then paid out $132.70, and the original copay was $33.17. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $33.17, and after the third party paid out $15.17, the customer copay was reduced to $18.00. The acquisition cost of the drug for Kmart was $154.99. Therefore, Kmart made a profit of roughly $10.88, due to overpayment, in addition to the dispensing fee. In sum, Kmart illegally made a profit of $11.88.

118.    On or about 4/30/2013, Kmart Store 4220 filled transaction 2780243 for Crestor for patient RC. RC is a Medicare beneficiary and Kmart submitted a claim for $194.97 to Medicare. Medicare then paid out $132.70, and the original copay was $33.17. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $33.17, and after the third party paid out $15.17, the customer copay was reduced to $18.00. The acquisition cost of the drug for Kmart was $154.99. Therefore, Kmart made a profit of roughly $10.88, due to overpayment, in addition to the dispensing fee. In sum, Kmart illegally made a profit of $12.88.

119.    On or about 3/22/2013, Kmart Store 4220 filled transaction 2774242 for Crestor for patient RC. RC is a Medicare beneficiary and Kmart submitted a claim for $192.98 to Medicare. Medicare then paid out $132.70, and the original copay was $33.17. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $33.17, and after the third party paid out $15.17, the customer copay was reduced to $18.00. The acquisition cost of the drug for Kmart was $146.22. Therefore, Kmart made a profit of roughly $19.65, due to overpayment, in addition to the dispensing fee. In sum, Kmart illegally made a profit of $22.65.

120.    On or about 2/16/2013, Kmart Store 4220 filled transaction 2769002 for Crestor for patient RC. RC is a Medicare beneficiary and Kmart submitted a claim for $192.98 to Medicare. Medicare then paid out $132.70, and the original copay was $33.17. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $33.17, and after the third party paid out $15.17, the customer copay was reduced to $18.00. The acquisition cost of the drug for Kmart was $146.22. Therefore, Kmart made a profit of roughly $19.65, due to overpayment, in addition to the dispensing fee. In sum, Kmart illegally made a profit of $22.65.

121.    On or about 1/7/2013, Kmart Store 4220 filled transaction 2762480 for Crestor for patient RC. RC is a Medicare beneficiary and Kmart submitted a claim for $192.98 to

Medicare. Medicare then paid out $132.70, and the original copay was $33.17. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $33.17, and after the third party paid out $15.17, the customer copay was reduced to $18.00. The acquisition cost of the drug for Kmart was $146.22. Therefore, Kmart made a profit of roughly $19.65, due to overpayment, in addition to the dispensing fee. In sum, Kmart illegally made a profit of $22.65.

122. On or about 10/22/2012, Kmart Store 4220 filled transaction 270733 for Lipitor for patient KL. KL is a Medicare beneficiary and Kmart submitted a claim to Medicare. Medicare then paid out $135.97, and the original copay was $40.00. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $40.00, and after the third party paid out $36.00, the customer copay was reduced to $4.00. The acquisition cost of the drug for Kmart was $161.48. Therefore, Kmart made a profit of roughly $14.49, due to overpayment, in addition to the dispensing fee. In sum, Kmart illegally made a profit of $15.74.

123. On or about 11/20/2012, Kmart Store 4220 filled transaction 2755393 for Lipitor for patient KL. KL is a Medicare beneficiary and Kmart submitted a claim to Medicare. Medicare then paid out $135.97, and the original copay was $40.00. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $40.00, and after the third party paid out $36.00, the customer copay was reduced to $4.00. The acquisition cost of the drug for Kmart was $161.48. Therefore, Kmart made a profit of roughly $14.49, due to overpayment, in addition to the dispensing fee. In sum, Kmart illegally made a profit of $15.74.

124. On or about 12/20/2012, Kmart Store 4220 filled transaction 2760102 for Lipitor for patient KL. KL is a Medicare beneficiary and Kmart submitted a claim to Medicare. Medicare then paid out $135.97, and the original copay was $40.00. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $40.00, and after the third party paid out $36.00, the customer copay was reduced to $4.00. The acquisition cost of the drug for Kmart was $161.48. Therefore, Kmart made a profit of roughly $14.49, due to overpayment, in addition to the dispensing fee. In sum, Kmart illegally made a profit of $15.74.

125. On or about 9/26/2012, Kmart Store 7526 filled transaction 3404369 for Crestor for patient MB. MB is a Medicare beneficiary and Kmart submitted a claim for $192.98 to Medicare. Medicare then paid out $79.00, and the original copay was $79.99. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $79.99, and after the third party paid out $50.00, the customer copay was reduced to $29.99. The acquisition cost of the drug for Kmart was $146.22. Therefore, Kmart made a profit of roughly $12.77, due to overpayment, in addition to the dispensing fee. In sum, Kmart illegally made a profit of $15.77.

126. On or about 7/11/2013, Kmart Store 7526 filled transaction 3477733 for Crestor for patient TK. TK is has a Heartland Employee Plan and Kmart submitted a claim for $215.60 to the Government. The Government then paid out $149.26, and the original copay was $30.00. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $30.00, and after the third party paid out $12.00, the customer copay was reduced to $18.00. The acquisition cost of the drug for Kmart was $164.29. Therefore, Kmart made a profit of roughly $14.97, due to overpayment, in addition to the dispensing fee. In sum, Kmart illegally made a profit of $16.47.

127. On or about 6/13/2013, Kmart Store 7526 filled transaction 3470802 for Crestor for patient TK. TK is has a Heartland Employee Plan and Kmart submitted a claim for $203.20 to the Government. The Government then paid out $139.20, and the original copay was $30.00. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $30.00, and after the third party paid out $12.00, the customer copay was reduced to $18.00. The acquisition cost

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States of America ex rel. Leighr v. Sears Holdings Corp., et al.*
29

Case 4:13-cv-00988-SRB   Document 1   Filed 10/11/13   Page 29 of 60

of the drug for Kmart was $154.99. Therefore, Kmart made a profit of roughly $14.21, due to overpayment, in addition to the dispensing fee. In sum, Kmart illegally made a profit of $15.71.

128. On or about 5/13/2013, Kmart Store 7526 filled transaction 3462853 for Crestor for patient TK. TK is has a Heartland Employee Plan and Kmart submitted a claim for $203.96 to the Government. The Government then paid out $141.22, and the original copay was $30.00. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $30.00, and after the third party paid out $12.00, the customer copay was reduced to $18.00. The acquisition cost of the drug for Kmart was $154.99. Therefore, Kmart made a profit of roughly $16.23, due to overpayment, in addition to the dispensing fee. In sum, Kmart illegally made a profit of $19.73.

129. On or about 5/10/2013, Kmart Store 7526 filled transaction 3462346 for Crestor for patient TK. TK is has a Heartland Employee Plan and Kmart submitted a claim for $579.02 to the Government. The Government then paid out $464.60, and the original copay was $30.00. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $30.00, and after the third party paid out $6.00, the customer copay was reduced to $25.00. The acquisition cost of the drug for Kmart was $469.09. Therefore, Kmart made a profit of roughly $26.51, due to overpayment, in addition to the dispensing fee. In sum, Kmart illegally made a profit of $28.01.

130. On or about 4/11/2013, Kmart Store 7526 filled transaction 3454934 for Crestor for patient TK. TK is has a Heartland Employee Plan and Kmart submitted a claim for $203.96 to the Government. The Government then paid out $141.22, and the original copay was $30.00. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $30.00, and after the third party paid out $12.00, the customer copay was reduced to $18.00. The acquisition cost of the drug for Kmart was $154.99. Therefore, Kmart made a profit of roughly $16.23, due to overpayment, in addition to the dispensing fee. In sum, Kmart illegally made a profit of $19.53.

131. On or about 4/9/2013, Kmart Store 7526 filled transaction 3454465 for Crestor for patient TK. TK is has a Heartland Employee Plan and Kmart submitted a claim for $579.02 to the Government. The Government then paid out $464.60, and the original copay was $30.00. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $30.00, and after the third party paid out $6.00, the customer copay was reduced to $25.00. The acquisition cost of the drug for Kmart was $469.09. Therefore, Kmart made a profit of roughly $26.54, due to overpayment, in addition to the dispensing fee. In sum, Kmart illegally made a profit of $28.01.

132. On or about 2/11/2013, Kmart Store 7526 filled transaction 3440578 for Crestor for patient TK. TK is has a Heartland Employee Plan and Kmart submitted a claim for $192.98 to the Government. The Government then paid out $141.22, and the original copay was $30.00. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $30.00, and after the third party paid out $12.00, the customer copay was reduced to $18.00. The acquisition cost of the drug for Kmart was $146.22. Therefore, Kmart made a profit of roughly $25.00, due to overpayment, in addition to the dispensing fee. In sum, Kmart illegally made a profit of $28.50.

133. On or about 3/27/2013, Kmart Store 4427 filled transaction 2091210 for Lialda for patient JC. JC is a Medicare beneficiary and Kmart submitted a claim for $859.56 to Medicare. Medicare then paid out $707.92, and the original copay was $64.82. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $64.82, and after the third party paid out $54.82, the customer copay was reduced to $10.00. The acquisition cost of the drug for Kmart was $678.88. Therefore, Kmart made a profit of roughly $93.86, due to overpayment, in addition to the dispensing fee. In sum, Kmart illegally made a profit of $97.06.

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States of America ex rel. Leighr v. Sears Holdings Corp., et al.*
30

Case 4:13-cv-00988-SRB   Document 1   Filed 10/11/13   Page 30 of 60

134. On or about 2/25/2013, Kmart Store 4427 filled transaction 2088192 for Lialda for patient JC. JC is a Medicare beneficiary and Kmart submitted a claim for $859.56 to Medicare. Medicare then paid out $732.56, and the original copay was $40.00. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $40.00, and after the third party paid out $30.00, the customer copay was reduced to $10.00. The acquisition cost of the drug for Kmart was $678.88. Therefore, Kmart made a profit of roughly $93.68, due to overpayment, in addition to the dispensing fee. In sum, Kmart illegally made a profit of $96.88.

135. On or about 1/21/2013, Kmart Store 4427 filled transaction 2084401 for Lialda for patient JC. JC is a Medicare beneficiary and Kmart submitted a claim for $859.56 to Medicare. Medicare then paid out $732.56, and the original copay was $40.00. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $40.00, and after the third party paid out $30.00, the customer copay was reduced to $10.00. The acquisition cost of the drug for Kmart was $678.88. Therefore, Kmart made a profit of roughly $93.68, due to overpayment, in addition to the dispensing fee. In sum, Kmart illegally made a profit of $96.88.

136. On or about 5/16/2013, Kmart Store 4427 filled transaction 2057488 for Lialda for patient JC. JC is a Medicare beneficiary and Kmart submitted a claim for $859.56 to Medicare. Medicare then paid out $383.20, and the original copay was $339.07. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $339.07, and after the third party paid out $120.00, the customer copay was reduced to $219.07. The acquisition cost of the drug for Kmart was $678.88. Therefore, Kmart made a profit of roughly $43.39, due to overpayment, in addition to the dispensing fee. In sum, Kmart illegally made a profit of $46.59.

137. On or about 3/23/2013, Kmart Store 4427 filled transaction 2051725 for Lialda for patient JC. JC is a Medicare beneficiary and Kmart submitted a claim for $859.56 to Medicare. Medicare then paid out $682.27, and the original copay was $40.00. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $40.00, and after the third party paid out $30.00, the customer copay was reduced to $10.00. The acquisition cost of the drug for Kmart was $678.88. Therefore, Kmart made a profit of roughly $43.39, due to overpayment, in addition to the dispensing fee. In sum, Kmart illegally made a profit of $46.59.

138. On or about 2/20/2012, Kmart Store 4427 filled transaction 2047796 for Lialda for patient JC. JC is a Medicare beneficiary and Kmart submitted a claim for $859.56 to Medicare. Medicare then paid out $682.27, and the original copay was $40.00. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $40.00, and after the third party paid out $30.00, the customer copay was reduced to $10.00. The acquisition cost of the drug for Kmart was $678.39. Therefore, Kmart made a profit of roughly $42.88, due to overpayment, in addition to the dispensing fee. In sum, Kmart illegally made a profit of $46.08.

139. On or about 1/23/2012, Kmart Store 4427 filled transaction 2044242 for Lialda for patient JC. JC is a Medicare beneficiary and Kmart submitted a claim for $859.56 to Medicare. Medicare then paid out $682.27, and the original copay was $40.00. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $40.00, and after the third party paid out $30.00, the customer copay was reduced to $10.00. The acquisition cost of the drug for Kmart was $629.01. Therefore, Kmart made a profit of roughly $93.26, due to overpayment, in addition to the dispensing fee. In sum, Kmart illegally made a profit of $96.46.

140. On or about 6/6/2011, Kmart Store 4427 filled transaction 2017833 for Lialda for patient JC. JC is a Medicare beneficiary and Kmart submitted a claim for $791.64 to Medicare. Medicare then paid out $333.83, and the original copay was $335.03. Kmart then fraudulently

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States of America ex rel. Leighr v. Sears Holdings Corp., et al.*
31

Case 4:13-cv-00988-SRB   Document 1   Filed 10/11/13   Page 31 of 60

split the bill, by submitting a claim to a third party, for $668.86, and after the third party paid out $120.00, the customer copay was reduced to $215.03. The acquisition cost of the drug for Kmart was $629.08 Therefore, Kmart made a profit of roughly $39.78, due to overpayment.

141.    On or about 4/22/2011, Kmart Store 4427 filled transaction 2012739 for Lialda for patient JC. JC is a Medicare beneficiary and Kmart submitted a claim for $791.64 to Medicare. Medicare then paid out $411.56, and the original copay was $257.30. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $668.86, and after the third party paid out $120.00, the customer copay was reduced to $137.30. The acquisition cost of the drug for Kmart was $629.08 Therefore, Kmart made a profit of roughly $39.78, due to overpayment.

142.    On or about 3/24/2011, Kmart Store 4427 filled transaction 2009163 for Lialda for patient JC. JC is a Medicare beneficiary and Kmart submitted a claim for $791.64 to Medicare. Medicare then paid out $628.86, and the original copay was $40.00. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $668.86, and after the third party paid out $30.00, the customer copay was reduced to $10.00. The acquisition cost of the drug for Kmart was $629.08 Therefore, Kmart made a profit of roughly $39.78, due to overpayment.

143.    On or about 2/22/2011, Kmart Store 4427 filled transaction 2005594 for Lialda for patient JC. JC is a Medicare beneficiary and Kmart submitted a claim for $791.64 to Medicare. Medicare then paid out $628.86, and the original copay was $40.00. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $668.86, and after the third party paid out $30.00, the customer copay was reduced to $10.00. The acquisition cost of the drug for Kmart was $629.08 Therefore, Kmart made a profit of roughly $39.78, due to overpayment.

144.    On or about 1/21/2011, Kmart Store 4427 filled transaction 2001922 for Lialda for patient JC. JC is a Medicare beneficiary and Kmart submitted a claim for $791.64 to Medicare. Medicare then paid out $628.86, and the original copay was $40.00. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $668.86, and after the third party paid out $30.00, the customer copay was reduced to $10.00. The acquisition cost of the drug for Kmart was $629.08. Therefore, Kmart made a profit of roughly $39.78, due to overpayment.

145.    On or about 10/26/2010, Kmart Store 4427 filled transaction 1991507 for Lialda for patient JC. JC is a Medicare beneficiary and Kmart submitted a claim for $2364.92 to Medicare. Medicare then paid out $1817.26, and the original copay was $120.00. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $1937.76, and after the third party paid out $91.00, the customer copay was reduced to $30.00. The acquisition cost of the drug for Kmart was $1887.23. Therefore, Kmart made a profit of roughly $51.03, due to overpayment.

146.    On or about 7/8/2013, Kmart Store 4427 filled transaction 2101754 for Crestor for patient SC. SC is a Medicare beneficiary and Kmart submitted a claim for $112.81 to Medicare. Medicare then paid out $48.45, and the original copay was $40.00. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $40.00, and after the third party paid out $22.00, the customer copay was reduced to $18.00. The acquisition cost of the drug for Kmart was $82.16. Therefore, Kmart made a profit of roughly $6.29, due to overpayment, in addition to the dispensing fee. In sum, Kmart illegally made a profit of $7.49.

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States of America ex rel. Leighr v. Sears Holdings Corp., et al.*
32

Case 4:13-cv-00988-SRB   Document 1   Filed 10/11/13   Page 32 of 60

147. On or about 6/6/2013, Kmart Store 4427 filled transaction 2098636 for Crestor for patient SC. SC is a Medicare beneficiary and Kmart submitted a claim for $106.99 to Medicare. Medicare then paid out $43.52, and the original copay was $40.00. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $40.00, and after the third party paid out $22.00, the customer copay was reduced to $18.00. The acquisition cost of the drug for Kmart was $82.32. Therefore, Kmart made a profit of roughly $1.20, due to overpayment, in addition to the dispensing fee. In sum, Kmart illegally made a profit of $4.40.

148. On or about 6/14/2013, Kmart Store 4427 filled transaction 2099562 for Nexium for patient LN. LN is a Medicare beneficiary, Medicare paid out $107.81, and the original copay was $97.54. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $97.54, and after the third party paid out $50.00, the customer copay was reduced to $47.54. The acquisition cost of the drug for Kmart was $191.22. Therefore, Kmart made a profit of roughly $14.13, due to overpayment, in addition to the dispensing fee. In sum, Kmart illegally made a profit of $15.13.

149. On or about 5/17/2013, Kmart Store 4427 filled transaction 2096666 for Nexium for patient LN. LN is a Medicare beneficiary, Medicare paid out $107.81, and the original copay was $97.54. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $97.54, and after the third party paid out $50.00, the customer copay was reduced to $47.54. The acquisition cost of the drug for Kmart was $191.22. Therefore, Kmart made a profit of roughly $14.13, due to overpayment, in addition to the dispensing fee. In sum, Kmart illegally made a profit of $17.13.

150. On or about 4/20/2013, Kmart Store 4427 filled transaction 2093808 for Nexium for patient LN. LN is a Medicare beneficiary, Medicare paid out $160.35, and the original copay was $45.00. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $45.00, and after the third party paid out $27.00, the customer copay was reduced to $18.00. The acquisition cost of the drug for Kmart was $191.22. Therefore, Kmart made a profit of roughly $14.13, due to overpayment, in addition to the dispensing fee. In sum, Kmart illegally made a profit of $17.13. The damage to the Government was $160.35.

151. On or about 3/15/2013, Kmart Store 4427 filled transaction 2090071 for Nexium for patient LN. LN is a Medicare beneficiary, Medicare paid out $160.35, and the original copay was $45.00. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $45.00, and after the third party paid out $27.00, the customer copay was reduced to $18.00. The acquisition cost of the drug for Kmart was $191.22. Therefore, Kmart made a profit of roughly $14.13, due to overpayment, in addition to the dispensing fee. In sum, Kmart illegally made a profit of $17.13. The damage to the Government was $160.35.

152. On or about 2/14/2013, Kmart Store 4427 filled transaction 2087178 for Nexium for patient LN. LN is a Medicare beneficiary, Medicare paid out $160.35, and the original copay was $45.00. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $45.00, and after the third party paid out $27.00, the customer copay was reduced to $18.00. The acquisition cost of the drug for Kmart was $191.22. Therefore, Kmart made a profit of roughly $14.13, due to overpayment, in addition to the dispensing fee. In sum, Kmart illegally made a profit of $17.13. The damage to the Government was $160.35.

153. On or about 1/2/2013, Kmart Store 4427 filled transaction 2082255 for Nexium for patient LN. LN is a Medicare beneficiary, Medicare paid out $148.78, and the original copay was $45.00. Kmart then fraudulently split the bill, by submitting a claim to a third party, for

Case 4:13-cv-00988-SRB   Document 1   Filed 10/11/13   Page 33 of 60

$45.00, and after the third party paid out $27.00, the customer copay was reduced to $18.00. The acquisition cost of the drug for Kmart was $180.39. Therefore, Kmart made a profit of roughly $13.39, due to overpayment, in addition to the dispensing fee. In sum, Kmart illegally made a profit of $16.39. The damage to the Government was $148.78.

154.　On or about 12/5/2012, Kmart Store 4427 filled transaction 2079432 for Nexium for patient LN. LN is a Medicare beneficiary, Medicare paid out $97.59, and the original copay was $98.83. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $98.83, and after the third party paid out $50.00, the customer copay was reduced to $48.83. The acquisition cost of the drug for Kmart was $180.39. Therefore, Kmart made a profit of roughly $16.03, due to overpayment, in addition to the dispensing fee. In sum, Kmart illegally made a profit of $19.28. The damage to the Government was $97.59.

155.　On or about 10/31/2012, Kmart Store 4427 filled transaction 2075617 for Nexium for patient LN. LN is a Medicare beneficiary, Medicare paid out $97.59, and the original copay was $98.83. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $98.83, and after the third party paid out $50.00, the customer copay was reduced to $48.83. The acquisition cost of the drug for Kmart was $180.39. Therefore, Kmart made a profit of roughly $16.03, due to overpayment, in addition to the dispensing fee. In sum, Kmart illegally made a profit of $19.28. The damage to the Government was $97.59.

156.　On or about 6/29/2012, Kmart Store 4427 filled transaction 2062496 for Nexium for patient LN. LN is a Medicare beneficiary, Medicare paid out $150.74, and the original copay was $40.00. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $40.00, and after the third party paid out $22.00, the customer copay was reduced to $18.00. The acquisition cost of the drug for Kmart was $175.14. Therefore, Kmart made a profit of roughly $15.60, due to overpayment, in addition to the dispensing fee. In sum, Kmart illegally made a profit of $18.85. The damage to the Government was $150.74.

157.　On or about 5/29/2012, Kmart Store 4427 filled transaction 2058664 for Nexium for patient LN. LN is a Medicare beneficiary, Medicare paid out $150.74, and the original copay was $40.00. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $40.00, and after the third party paid out $16.75, the customer copay was reduced to $25.00. The acquisition cost of the drug for Kmart was $175.14. Therefore, Kmart made a profit of roughly $17.35, due to overpayment, in addition to the dispensing fee. In sum, Kmart illegally made a profit of $18.60. The damage to the Government was $150.74.

158.　On or about 3/22/2012, Kmart Store 4427 filled transaction 2051438 for Nexium for patient LN. LN is a Medicare beneficiary, Medicare paid out $150.74, and the original copay was $40.00. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $40.00, and after the third party paid out $16.75, the customer copay was reduced to $25.00. The acquisition cost of the drug for Kmart was $175.14. Therefore, Kmart made a profit of roughly $17.35, due to overpayment, in addition to the dispensing fee. In sum, Kmart illegally made a profit of $18.60. The damage to the Government was $150.74.

159.　On or about 11/2/2011, Kmart Store 4427 filled transaction 2034884 for Nexium for patient LN. LN is a Medicare beneficiary and Kmart submitted a claim for $207.97 to Medicare. Medicare then paid out $89.38, and the original copay was $90.63. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $108.01, and after the third party paid out $51.75, the customer copay was reduced to $40.63. The acquisition cost of the

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States of America ex rel. Leighr v. Sears Holdings Corp., et al.*
34

Case 4:13-cv-00988-SRB　Document 1　Filed 10/11/13　Page 34 of 60

drug for Kmart was $165.35. Therefore, Kmart made a profit of roughly $16.41, due to overpayment, in addition to the dispensing fee. In sum, Kmart illegally made a profit of $17.66.

160.    On or about 9/8/2011, Kmart Store 4427 filled transaction 2028510 for Nexium for patient LN. LN is a Medicare beneficiary and Kmart submitted a claim for $207.97 to Medicare. Medicare then paid out $135.01, and the original copay was $45.00. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $108.01, and after the third party paid out $21.75, the customer copay was reduced to $25.00. The acquisition cost of the drug for Kmart was $165.35. Therefore, Kmart made a profit of roughly $16.41, due to overpayment, in addition to the dispensing fee. In sum, Kmart illegally made a profit of $17.61.

161.    On or about 6/19/2013, Kmart Store 4427 filled transaction 2099429 for Crestor for patient TL. TL is a Medicare beneficiary and Kmart submitted a claim for $203.96 to Medicare. Medicare then paid out $125.83, and the original copay was $40.00. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $40.00, and after the third party paid out $22.00, the customer copay was reduced to $18.00. The acquisition cost of the drug for Kmart was $154.99. Therefore, Kmart made a profit of roughly $10.84, due to overpayment, in addition to the dispensing fee. In sum, Kmart illegally made a profit of $12.04.

162.    On or about 5/17/2013, Kmart Store 4427 filled transaction 2096591 for Crestor for patient TL. TL is a Medicare beneficiary and Kmart submitted a claim for $203.96 to Medicare. Medicare then paid out $125.83, and the original copay was $40.00. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $40.00, and after the third party paid out $22.00, the customer copay was reduced to $18.00. The acquisition cost of the drug for Kmart was $154.99. Therefore, Kmart made a profit of roughly $10.84, due to overpayment, in addition to the dispensing fee. In sum, Kmart illegally made a profit of $14.04.

163.    On or about 4/17/2013, Kmart Store 4427 filled transaction 2093511 for Crestor for patient TL. TL is a Medicare beneficiary and Kmart submitted a claim for $203.96 to Medicare. Medicare then paid out $125.83, and the original copay was $40.00. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $40.00, and after the third party paid out $22.00, the customer copay was reduced to $18.00. The acquisition cost of the drug for Kmart was $154.99. Therefore, Kmart made a profit of roughly $10.84, due to overpayment, in addition to the dispensing fee. In sum, Kmart illegally made a profit of $14.04.

164.    On or about 2/17/2013, Kmart Store 4427 filled transaction 2097390 for Crestor for patient TL. TL is a Medicare beneficiary and Kmart submitted a claim for $192.98 to Medicare. Medicare then paid out $125.83, and the original copay was $40.00. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $40.00, and after the third party paid out $22.00, the customer copay was reduced to $18.00. The acquisition cost of the drug for Kmart was $146.22. Therefore, Kmart made a profit of roughly $19.61, due to overpayment, in addition to the dispensing fee. In sum, Kmart illegally made a profit of $22.81.

165.    On or about 1/17/2013, Kmart Store 4427 filled transaction 2083945 for Crestor for patient TL. TL is a Medicare beneficiary and Kmart submitted a claim for $192.98 to Medicare. Medicare then paid out $125.83, and the original copay was $40.00. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $40.00, and after the third party paid out $22.00, the customer copay was reduced to $18.00. The acquisition cost of the drug for Kmart was $146.22. Therefore, Kmart made a profit of roughly $19.61, due to overpayment, in addition to the dispensing fee. In sum, Kmart illegally made a profit of $22.81.

166. On or about 12/17/2012, Kmart Store 4427 filled transaction 2080531 for Crestor for patient TL. TL is a Medicare beneficiary and Kmart submitted a claim for $192.98 to Medicare. Medicare then paid out $77.66, and the original copay was $78.85. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $78.85, and after the third party paid out $50.00, the customer copay was reduced to $28.85. The acquisition cost of the drug for Kmart was $146.22. Therefore, Kmart made a profit of roughly $10.29, due to overpayment, in addition to the dispensing fee. In sum, Kmart illegally made a profit of $13.49.

167. On or about 11/17/2012, Kmart Store 4427 filled transaction 2077422 for Crestor for patient TL. TL is a Medicare beneficiary and Kmart submitted a claim for $192.98 to Medicare. Medicare then paid out $77.66, and the original copay was $78.85. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $78.85, and after the third party paid out $50.00, the customer copay was reduced to $28.85. The acquisition cost of the drug for Kmart was $146.22. Therefore, Kmart made a profit of roughly $10.29, due to overpayment, in addition to the dispensing fee. In sum, Kmart illegally made a profit of $13.49.

168. On or about 10/17/2012, Kmart Store 4427 filled transaction 2074203 for Crestor for patient TL. TL is a Medicare beneficiary and Kmart submitted a claim for $192.98 to Medicare. Medicare then paid out $77.66, and the original copay was $78.85. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $78.85, and after the third party paid out $50.00, the customer copay was reduced to $28.85. The acquisition cost of the drug for Kmart was $146.22. Therefore, Kmart made a profit of roughly $10.29, due to overpayment, in addition to the dispensing fee. In sum, Kmart illegally made a profit of $13.49. On or about 9/17/2012, Kmart Store 4427 filled transaction 2070929 for Crestor for patient TL. TL is a Medicare beneficiary and Kmart submitted a claim for $192.98 to Medicare. Medicare then paid out $77.66, and the original copay was $78.85. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $78.85, and after the third party paid out $50.00, the customer copay was reduced to $28.85. The acquisition cost of the drug for Kmart was $146.22. Therefore, Kmart made a profit of roughly $10.29, due to overpayment, in addition to the dispensing fee. In sum, Kmart illegally made a profit of $13.49.

169. On or about 8/19/2012, Kmart Store 4427 filled transaction 2067758 for Crestor for patient TL. TL is a Medicare beneficiary and Kmart submitted a claim for $192.98 to Medicare. Medicare then paid out $94.81, and the original copay was $61.70. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $61.70, and after the third party paid out $43.70, the customer copay was reduced to $18.00. The acquisition cost of the drug for Kmart was $146.22. Therefore, Kmart made a profit of roughly $10.29, due to overpayment, in addition to the dispensing fee. In sum, Kmart illegally made a profit of $13.49.

170. On or about 7/18/2012, Kmart Store 4427 filled transaction 2064261 for Crestor for patient TL. TL is a Medicare beneficiary and Kmart submitted a claim for $179.43 to Medicare. Medicare then paid out $116.51, and the original copay was $40.00. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $40.00, and after the third party paid out $22.00, the customer copay was reduced to $18.00. The acquisition cost of the drug for Kmart was $135.39. Therefore, Kmart made a profit of roughly $21.12, due to overpayment, in addition to the dispensing fee. In sum, Kmart illegally made a profit of $24.32.

171. On or about 6/17/2012, Kmart Store 4427 filled transaction 2060912 for Crestor for patient TL. TL is a Medicare beneficiary and Kmart submitted a claim for $179.43 to Medicare. Medicare then paid out $105.00, and the original copay was $40.00. Kmart then

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States of America ex rel. Leighr v. Sears Holdings Corp., et al.*
36

Case 4:13-cv-00988-SRB Document 1 Filed 10/11/13 Page 36 of 60

fraudulently split the bill, by submitting a claim to a third party, for $40.00, and after the third party paid out $22.00, the customer copay was reduced to $18.00. The acquisition cost of the drug for Kmart was $135.80. Therefore, Kmart made a profit of roughly $9.20, due to overpayment, in addition to the dispensing fee. In sum, Kmart illegally made a profit of $12.40.

172.    On or about 5/16/2012, Kmart Store 4427 filled transaction 2057410 for Crestor for patient TL. TL is a Medicare beneficiary and Kmart submitted a claim for $179.43 to Medicare. Medicare then paid out $105.00, and the original copay was $40.00. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $40.00, and after the third party paid out $22.00, the customer copay was reduced to $18.00. The acquisition cost of the drug for Kmart was $135.39. Therefore, Kmart made a profit of roughly $9.61, due to overpayment, in addition to the dispensing fee. In sum, Kmart illegally made a profit of $12.81.

173.    On or about 4/18/2012, Kmart Store 4427 filled transaction 2054424 for Crestor for patient TL. TL is a Medicare beneficiary and Kmart submitted a claim for $179.43 to Medicare. Medicare then paid out $105.00, and the original copay was $40.00. Kmart then fraudulently split the bill, by submitting a claim to a third party, for $40.00, and after the third party paid out $22.00, the customer copay was reduced to $18.00. The acquisition cost of the drug for Kmart was $135.39. Therefore, Kmart made a profit of roughly $9.61, due to overpayment, in addition to the dispensing fee. In sum, Kmart illegally made a profit of $12.81.


49. By engaging in split-billing, Kmart defrauds the government by recouping some of its acquisition costs from reimbursements by both parties without informing the GHPs of its activities.

50. Since the GHPs have no knowledge of the split-billing scheme, they do not receive the discount that is being offered to Kmart customers who are GHP beneficiaries.

51. Another incentive for Kmart to split-bill prescriptions is that pharmaceutical manufacturers reward Kmart for selling their brand name products rather than generic counterparts.

52. These manufacturers incentivize Kmart to dispense their products by awarding Kmart a dollar amount per prescription filled. This added revenue provides extra motivation for Kmart to continue its illegal practice of split-billing.

53. Pharmaceutical manufacturers also offer similar incentive programs for other drugs such as Nasonex and Diovan; such companies give Kmart a specific amount per prescription filled. This

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States of America ex rel. Leighr v. Sears Holdings Corp., et al.*
37

Case 4:13-cv-00988-SRB    Document 1    Filed 10/11/13    Page 37 of 60

incentive is awarded to Kmart's corporate office in the form of rebates and other incentives, and the store level pharmacies do not receive the money directly from the manufacturers.

54. Many pharmacists are unaware of what extra revenue Kmart is generating from this illegal split-billing practice because the revenue does not show up on the store level profit and loss statements. Instead, Relator claims that the extra revenue is sent to a Sears Holdings Corporate office in Texas.

## V.    Illegal Remunerations to GHP Beneficiaries in the Form of Gas Discounts

55. In addition to Kmart's fraudulent split-billing scheme, Kmart further attempted to induce GHP beneficiaries to use Kmart pharmacies by way of a gas discount promotion.

56. Kmart began this promotion began in October 2012 for the Kansas City area. However, Kmart had already begun the promotion in other parts of the country.

57. With this promotion, customers received coupons that discounted gas at BP and Speedway gas stations in exchange for purchasing items not only from the Kmart store, but also for filling prescriptions at the Kmart pharmacy.

58. Kmart did not implement a mechanism to stop GHP beneficiaries from receiving the discounts. The coupon would print instantly from the register.

59. Because Kmart extended its gas rewards discount promotion to GHP beneficiaries, some customers even filled unnecessary prescriptions which were covered in full by GHPs, leaving the customer copayment to be zero, just to receive a discount on gas.

60. Relator has personal knowledge of instances where customers filled unnecessary prescriptions for the sole purpose of acquiring the benefits of filling a prescription at Kmart.

61. On August 2, 2013, Kmart notified all pharmacists that effective August 3, 2013, the gas rewards program would end and printers would no longer print gas discount vouchers for

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States of America ex rel. Leighr v. Sears Holdings Corp., et al.*
38

Case 4:13-cv-00988-SRB   Document 1   Filed 10/11/13   Page 38 of 60

prescriptions filled at Kmart. Kmart is to re-launch its gas rewards program "to match the same program that is being run for Kmart, store side."

62. Kmart has not provided any additional information regarding the ending or re-launching of the gas rewards program. However, on or about July 19, 2013 Kmart store 4157 filled prescriptions 4453421, 6897014, 6899768, 6899769, and 6899770 for customer DF.

63. On August 3, 2013, after Kmart changed its gas discount rewards program, Kmart store 4157 filled prescription 6900341 for customer DF. All prescriptions were rung up together on August 3, 2012, totaling $57.26, and customer DF's gas rewards coupon automatically printed from the register.

64. Although customer DF did not receive 10 cents in gas discounts per prescription, he still received 30 cents in gas rewards, because his copay total was over $50. Customer DF was a GHP beneficiary, enrolled in Medicare Part D.

65. Even though Kmart changed its gas rewards program, effective August 3, 2013, to stop awarding savings of 10 cents per prescription filled, Kmart continued to award 30 cents because the total copayment was above $50 for prescriptions filled at the pharmacy.

66. Specific instances of Kmart offering illegal remunerations to GHP beneficiaries are alleged with particularity below:

1. On or about 11/9/2012, Kmart store 4157 filled prescription 6896711 for patient AW. Customer AW's gas rewards coupon automatically printed from the register. Customer AW received 10 cents in gas rewards, because he filled one prescription at 10 cents per prescription. Customer AW is a GHP beneficiary, enrolled in Missouri Medicaid.

2. On or about 10/31/2012, Kmart store 9336 filled prescriptions 6952186, 6959166, 6948148, 6950116, 6950741, and 6950969 for patient DV. Customer DV's gas rewards coupon automatically printed from the register. Customer DV received 60 cents in gas rewards, because he filled six prescriptions at 10 cents per prescription. Customer DV is a GHP beneficiary, enrolled in Missouri Medicaid.

3. On or about 10/31/2012, Kmart store 9336 filled prescription 949804 for customer EC. Customer EC's gas rewards coupon automatically printed from the register.

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States of America ex rel. Leighr v. Sears Holdings Corp., et al.*
39

Case 4:13-cv-00988-SRB   Document 1   Filed 10/11/13   Page 39 of 60

Customer EC received 10 cents in gas rewards, because he filled one prescription at 10 cents per prescription. Customer EC is a GHP beneficiary, enrolled in Medicare Part D.

4.      On or about 11/3/2012, Kmart filled prescription 6950758 for customer DAR. Customer DAR's gas rewards coupon automatically printed from the register. Customer DAR received 10 cents in gas rewards, because he filled one prescription at 10 cents per prescription. Customer DAR is a GHP beneficiary, enrolled in Medicare Part D.

5.      On or about 11/4/2012, Kmart filled prescription 6950765 for customer VA. Customer VA's gas rewards coupon automatically printed from the register. Customer VA received 10 cents in gas rewards, because he filled one prescription at 10 cents per prescription. Customer VA is a GHP beneficiary, enrolled in Medicare Part D.

6.      On or about 10/29/2012, Kmart filled prescription 6953715 for customer RH. Customer RH's gas rewards coupon automatically printed from the register. Customer RH received 10 cents in gas rewards, because he filled one prescription at 10 cents per prescription. Customer RH is a GHP beneficiary, enrolled in Missouri Medicaid.

7.      On or about 11/2/2012, Kmart filled prescription 6953848 for customer PH. Customer PH's gas rewards coupon automatically printed from the register. Customer PH received 10 cents in gas rewards, because he filled one prescription at 10 cents per prescription. Customer PH is a GHP beneficiary, enrolled in a Federal plan.

8.      On or about 11/2/2012, Kmart filled prescription 6953862 for customer PM. Customer PM's gas rewards coupon automatically printed from the register. Customer PM received 10 cents in gas rewards, because he filled one prescription at 10 cents per prescription. Customer PM is a GHP beneficiary, enrolled in Medicare Part D.

9.      On or about 10/26/2012, Kmart store 4157 filled prescriptions6896492, 6896494, and 6896493 for customer GPW. Customer GPW's gas rewards coupon automatically printed from the register. Customer PM received 30 cents in gas rewards, because he filled three prescriptions at 10 cents per prescription. Customer GPW is a GHP beneficiary, enrolled in Medicare Part D.

10.     On or about 10/25/2012, Kmart store 4157 filled prescription 6896424 for customer BB. Customer BB's gas rewards coupon automatically printed from the register. Customer BB received 10 cents in gas rewards, because he filled one prescription at 10 cents per prescription. Customer BB is a GHP beneficiary, enrolled in Medicare Part D.

11.     On or about 10/26/2012, Kmart filled prescriptions 6894648 and 6895064 for customer MDW. Customer MDW's gas rewards coupon automatically printed from the register. Customer MDW received 20 cents in gas rewards, because he filled two prescriptions at 10 cents per prescription. Customer MDW is a GHP beneficiary, enrolled in Missouri Medicaid.

12.     On or about 10/26/2012, Kmart store 4157 filled prescription 6896468 for customer BC. Customer BC's gas rewards coupon automatically printed from the register. Customer BC received 10 cents in gas rewards, because he filled one prescription at 10 cents per prescription. Customer BC is a GHP beneficiary, enrolled in Medicare Part D.

13.     On or about 10/29/2012, Kmart store 4157 filled prescription 6894818 for customer BH. Customer BH's gas rewards coupon automatically printed from the register. Customer BH received 10 cents in gas rewards, because he filled one prescription at 10 cents per prescription. Customer BH is a GHP beneficiary, enrolled in Missouri Medicaid.

14.     On or about 10/25/2012, Kmart store 4157 filled prescription 8807072 for customer MEF. The copay was $8.00. Customer MEF's gas rewards coupon automatically

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States of America ex rel. Leighr v. Sears Holdings Corp., et al.*
40

Case 4:13-cv-00988-SRB   Document 1   Filed 10/11/13   Page 40 of 60

printed from the register. Customer MEF received 10 cents in gas rewards, because he filled one prescription at 10 cents per prescription. Customer MEF is a GHP beneficiary, enrolled in Medicare Part D.

15. On or about 10/29/2012, Kmart store 4157 filled prescription 4452981 for customer FFQ. Customer FFQ's gas rewards coupon automatically printed from the register. Customer FFQ received 10 cents in gas rewards, because he filled one prescription at 10 cents per prescription. Customer FFO is a GHP beneficiary, enrolled in Medicare Part D.

16. On or about 10/25/2012, Kmart store 4157 filled prescription 6894467 for customer CW. On or about 10/26/2012, Kmart filled prescription 6896472 for customer CW. Customer CW's gas rewards coupon automatically printed from the register. Both prescriptions were rung up together and customer CW received 20 cents in gas rewards, because he filled two prescriptions at 10 cents per prescription. Customer CW is a GHP beneficiary.

17. On or about 10/18/2012, Kmart filled prescription 6894301 for customer DF. Customer DF's gas rewards coupon automatically printed from the register. Customer DF received 20 cents in gas rewards, because he filled two prescriptions at 10 cents per prescription. Customer DF is a GHP beneficiary, enrolled in Medicare Part D Senior Program.

18. On or about 10/24/2012, Kmart store 9336 filled prescriptions 6951919 for customer LA. On or 10/28/2012, Kmart store 9336 filled prescription 6948293, and 6950780 for customer LA. Customer LA's gas rewards coupon automatically printed from the register. All prescriptions were rung up together and customer LA received 30 cents in gas rewards, because he filled three prescriptions at 10 cents per prescription. Customer LA is a GHP beneficiary, enrolled in Medicare Part D.

19. On or about 10/28/2012, Kmart store 9336 filled prescription 6945830 for customer MJ. Customer MJ's gas rewards coupon automatically printed from the register. Customer MJ received 10 cents in gas rewards, because he filled one prescription at 10 cents per prescription. Customer MJ is a GHP beneficiary, enrolled in Medicare Part D.

20. On or about 10/26/2012, Kmart store 9336 filled prescription 6951384 for customer DEM. Customer DEM's gas rewards coupon automatically printed from the register. Customer DEM received 10 cents in gas rewards, because he filled one prescription at 10 cents per prescription. Customer DEM is a GHP beneficiary, enrolled in Medicare Part D.

21. On or about 10/24/2012, Kmart store 9336 filled prescriptions 6953623, 4462179, 6948540, 6952842, 6949836, 6952840, 6952840, 4462096, 6952083, 6953605, and 6949834 for customer KJ. Customer KJ's gas rewards coupon automatically printed from the register. Customer KJ received 60 cents in gas rewards, because he filled six prescriptions at 10 cents per prescription. Customer KJ is a GHP beneficiary, enrolled in Medicare Part D.

22. On or about 10/24/2012, Kmart store 9336 filled prescriptions 6949427 and 6953637 for customer JM. Customer JM's gas rewards coupon automatically printed from the register. Customer JM received 20 cents in gas rewards, because he filled two prescriptions at 10 cents per prescription. Customer JM is a GHP beneficiary, enrolled in Medicare Part D.

23. On or about 0/26/2012, Kmart store 9336 filled prescription 6950434 for customer RRA. On or about 10/26/2012, Kmart store 9336 filled prescription 4462226 for customer RRA. Customer RRA's gas rewards coupon automatically printed from the register. Customer RRA received 20 cents in gas rewards, because he filled two prescriptions at 10 cents per prescription. Customer RRA is a GHP beneficiary, enrolled in Medicare Part D.

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States of America ex rel. Leighr v. Sears Holdings Corp., et al.*
41

Case 4:13-cv-00988-SRB   Document 1   Filed 10/11/13   Page 41 of 60

24. On or about 10/25/2012, Kmart store 4157 filled prescriptions 6896443, 6894598, and 6896421 for customer CW. On or about 10/18/2012, Kmart store 4157 filled prescription 6895664 for customer CW. On or 10/27/2012, Kmart store 4157 filled prescription 6895798 for customer CW. Customer CW's gas rewards coupon automatically printed from the register. Customer CW received 50 cents in gas rewards, because he filled five prescriptions at 10 cents per prescription. Customer CW is a GHP beneficiary, enrolled in Medicare Part D.

25. On or about 10/27/2012, Kmart store 4157 filled prescriptions 4452980 and 6896512 for customer LVG. Customer LVG's gas rewards coupon automatically printed from the register. Customer LVG received 20 cents in gas rewards, because he filled two prescriptions at 10 cents per prescription. Customer LVG is a GHP beneficiary, enrolled in Medicare Part D.

26. On or about 10/26/2012, Kmart store 4157 filled prescriptions 6894023 and 6893533 for patient SF. Customer SF's gas rewards coupon automatically printed from the register. Customer SF received 20 cents in gas rewards, because he filled two prescriptions at 10 cents per prescription. Customer SF is a GHP beneficiary, enrolled in Medicare Part D.

27. On or about 10/27/2012, Kmart store 4157 filled prescriptions 6892008 and 6896497 for customer TL. Customer TL's gas rewards coupon automatically printed from the register. Customer TL received 20 cents in gas rewards, because he filled two prescriptions at 10 cents per prescription. Customer TL is a GHP beneficiary, enrolled in Medicare Part D.

28. On or about 10/23/2012, Kmart store 4157 filled prescription 6896127 for customer LRB. On or about 10/24/2012, Kmart store 4157 filled prescription 6896129 for customer LRB. Customer LRB's gas rewards coupon automatically printed from the register. Both prescriptions were rung up together and customer LRB received 20 cents in gas rewards, because he filled two prescriptions at 10 cents per prescription. Customer LRB is a GHP beneficiary, enrolled in Medicare Part D.

29. On or about 11/10/2012, Kmart store 4157 filled prescription 6895002 for customer SK. SK's gas rewards coupon automatically printed from the register. Customer SK received 10 cents in gas rewards, because he filled one prescription at 10 cents per prescription. Customer SK is a GHP beneficiary, enrolled in Medicare Part D.

30. On or about 11/10/2012, Kmart store 4157 filled prescriptions 6893844, 6893941, and 6896115 for customer CA. Customer CA's gas rewards coupon automatically printed from the register. Customer CA received 30 cents in gas rewards, because he filled three prescriptions at 10 cents per prescription. Customer CA is a GHP beneficiary, enrolled in Missouri Medicaid.

31. On or about 11/8/2012, Kmart store 9336 filled prescription 2211543 for customer TL. Customer TL's gas rewards coupon automatically printed from the register. Customer TL received 10 cents in gas rewards, because he filled one prescription at 10 cents per prescription. Customer TL is a GHP beneficiary, enrolled in Missouri Medicaid.

32. On or about 11/11/2012, Kmart store 9336 filled prescription 6892488 for customer MS. Customer MS's gas rewards coupon automatically printed from the register. Customer MS received 10 cents in gas rewards, because he filled one prescription at 10 cents per prescription. Customer MS is a GHP beneficiary, enrolled in Medicare Part D.

33. On or about 11/11/2012, Kmart store 9336 filled prescription 6894078 for customer EL. Customer EL's gas rewards coupon automatically printed from the register. Customer EL received 10 cents in gas rewards, because he filled one prescription at 10 cents per prescription. Customer EL is a GHP beneficiary, enrolled in Medicare Part D.

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States of America ex rel. Leighr v. Sears Holdings Corp., et al.*
42

Case 4:13-cv-00988-SRB   Document 1   Filed 10/11/13   Page 42 of 60

34. On or about 11/8/2012, Kmart store 9336 filled prescription 6851690 for customer AS. Customer AS's gas rewards coupon automatically printed from the register. Customer AS received 10 cents in gas rewards, because he filled one prescription at 10 cents per prescription. Customer AS is a GHP beneficiary, enrolled in Medicare Part D.

35. On or about 11/6/2012, Kmart store 4157 filled prescription 6896630 for customer WR. Customer WR's gas rewards coupon automatically printed from the register. Customer WR received 10 cents in gas rewards, because he filled one prescription at 10 cents per prescription. Customer WR is a GHP beneficiary, enrolled in a Federal plan.

36. On or about 11/9/2012, Kmart store 4157 filled prescriptions 6896712 and 4453018 for customer KP. Customer KP's gas rewards coupon automatically printed from the register. Customer KP received 20 cents in gas rewards, because he filled two prescriptions at 10 cents per prescription. Customer KP is a GHP beneficiary, enrolled in a federal plan.

37. On or about 11/7/2012, Kmart store 4157 filled prescription 6894133 for customer DGB. Customer DGB's gas rewards coupon automatically printed from the register. Customer DGB received 10 cents in gas rewards, because he filled one prescription at 10 cents per prescription. Customer DGB is a GHP beneficiary, enrolled in Medicare Part D.

38. On or about 11/9/2012, Kmart store 4157 filled prescription 4453017 for customer EW. Customer EW's gas rewards coupon automatically printed from the register. Customer EW received 10 cents in gas rewards, because he filled one prescription at 10 cents per prescription. Customer EW is a GHP beneficiary, enrolled in Missouri Medicaid.

39. On or about 11/5/2012, Kmart store 4157 filled prescription 6896606 for customer CW. Customer CW's gas rewards coupon automatically printed from the register. Customer CW received 10 cents in gas rewards, because he filled one prescription at 10 cents per prescription. Customer CW is a GHP beneficiary, enrolled in Missouri Medicaid.

40. On or about 11/9/2012, Kmart store 4157 filled prescription 4453016 for customer CW. Customer CW's gas rewards coupon automatically printed from the register. Customer CW received 10 cents in gas rewards, because he filled one prescription at 10 cents per prescription. Customer CW is a GHP beneficiary, enrolled in Medicaid Part D.

41. On or about 11/9/2012, Kmart store 4157 filled prescription 2206498 for customer MM. Customer MM's gas rewards coupon automatically printed from the register. Customer MM received 10 cents in gas rewards, because he filled one prescription at 10 cents per prescription. Customer MM is a GHP beneficiary, enrolled in Medicaid Part D.

42. On or about 11/9/2012, Kmart store 4157 filled prescriptions 4453015 and 6896707 for customer DF. Customer DF's gas rewards coupon automatically printed from the register. Customer DF received 20 cents in gas rewards, because he filled two prescriptions at 10 cents per prescription. Customer DF is a GHP beneficiary, enrolled in Medicaid Part D.

43. On or about 11/8/2012, Kmart store 4157 filled prescription 6896670 for customer NFG. Customer NFG's gas rewards coupon automatically printed from the register. Customer NFG received 10 cents in gas rewards, because he filled one prescription at 10 cents per prescription. Customer NFG is a GHP beneficiary, enrolled in Medicaid Part D.

44. On or about 11/5/2012, Kmart store 4157 filled prescription 6895050, 6895052, and 6895053 for customer SF. Customer SF's gas rewards coupon automatically printed from the register. Customer SF received 30 cents in gas rewards, because he filled three prescriptions at 10 cents per prescription. Customer SF is a GHP beneficiary, enrolled in Missouri Medicaid.

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States of America ex rel. Leighr v. Sears Holdings Corp., et al.*
43

Case 4:13-cv-00988-SRB   Document 1   Filed 10/11/13   Page 43 of 60

45.      On or about 11/9/2012, Kmart store 4157 filled prescription 6896181 for customer SF. Customer SF's gas rewards coupon automatically printed from the register. Customer SF received 10 cents in gas rewards, because he filled one prescription at 10 cents per prescription. Customer SF is a GHP beneficiary, enrolled in Missouri Medicaid.

46.      On or about 11/9/2012, Kmart store 4157 filled prescriptions 6896696, 6892888, 6896696, and 6896701 for customer CW. Customer SF's gas rewards coupon automatically printed from the register. Customer CW received 40 cents in gas rewards, because he filled four prescriptions at 10 cents per prescription. Customer CW is a GHP beneficiary, enrolled in Medicare Part D.

47.      On or about 11/1/2012, Kmart store 4157 filled prescription 4452991 for customer AL. On or about 10/30/2012, Kmart store 4157 filled prescription 6892250 for customer AL. Customer AL's gas rewards coupon automatically printed from the register. Both prescriptions were rung up together and customer AL received 20 cents in gas rewards, because he filled two prescriptions at 10 cents per prescription. Customer AL is a GHP beneficiary and a Federal employee.

48.      On or about 11/9/2012, Kmart store 4157 filled prescription 6896154 for customer EP. Customer EP's gas rewards coupon automatically printed from the register. Customer EP received 10 cents in gas rewards, because he filled one prescription at 10 cents per prescription. Customer EP is a GHP beneficiary, enrolled in Medicare Part D.

49.      On or about 11/9/2012, Kmart store 4157 filled prescription 6895941 for customer GM. Customer GM's gas rewards coupon automatically printed from the register. Customer GM received 10 cents in gas rewards, because he filled one prescription at 10 cents per prescription. Customer GM is a GHP beneficiary and a Federal employee.

50.      On or about 11/5/2012, Kmart store 4157 filled prescription 6891658 for customer MPC. Customer MPC's gas rewards coupon automatically printed from the register. Customer MPC received 10 cents in gas rewards, because he filled one prescription at 10 cents per prescription. Customer MPC is a GHP beneficiary, enrolled in Medicare Part D.

51.      On or about 11/5/2012, Kmart store 9336 filled prescription 4452998 for customer GH. Customer GH's gas rewards coupon automatically printed from the register. Customer GH received 10 cents in gas rewards, because he filled one prescription at 10 cents per prescription. Customer GH is a GHP beneficiary, enrolled in Medicare Part D.

52.      On or about 11/3/2012, Kmart store 9336 filled prescriptions 6950062 and 6953778 for customer JAL. Customer JAL's gas rewards coupon automatically printed from the register. Customer JAL received 20 cents in gas rewards, because he filled two prescriptions at 10 cents per prescription. Customer JAL is a GHP beneficiary, enrolled in Medicare Part D.

53.      On or 11/1/2012, Kmart store 9336 filled prescriptions 6951737 and 6951395 for customer RT. Customer RT's gas rewards coupon automatically printed from the register. Customer RT received 20 cents in gas rewards, because he filled two prescriptions at 10 cents per prescription. Customer RT is a GHP beneficiary, enrolled in a Federal plan.

54.      On or 11/5/2012, Kmart store 4157 filled prescriptions 6896015 and 6895946 for customer BB. Customer BB's gas rewards coupon automatically printed from the register. Customer BB received 20 cents in gas rewards, because he filled two prescriptions at 10 cents per prescription. Customer BB is a GHP beneficiary, enrolled in Medicare Part D.

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States of America ex rel. Leighr v. Sears Holdings Corp., et al.*
44

Case 4:13-cv-00988-SRB   Document 1   Filed 10/11/13   Page 44 of 60

55. On or about November 5, 2012 Kmart store 9336 filled prescription 2211515 for customer DE, with the copay totaling $181.78. On November 6, 2012, Kmart store 9336 filled prescription 4462268 for customer DE, with the copay totaling $12.87. Both prescriptions were rung up together and customer DE's gas rewards coupon automatically printed from the register. Customer DE received 20 cents in gas rewards, because he filled two prescriptions at 10 cents per prescription, and his copay total was over $50, thus awarding him another 30 cents in gas rewards. Customer DE is a GHP beneficiary, enrolled in Medicare Part D.

56. On or about November 5, 2012 Kmart store 4157 filled prescriptions 6896015 and 689546 for customer BB. Customer BB's gas rewards coupon automatically printed from the register. Customer BB received 20 cents in gas rewards, because he filled two prescriptions at 10 cents per prescription. Customer BB is a GHP beneficiary, enrolled in Medicare Part D.

57. Between October 26, 2012 and November 1, 2012, Kmart store 9336 filled prescriptions 6952156, 6949166, 6948148, 6950116, 6950741 and 6950969 for customer DV. All prescriptions were rung up together and customer DV's gas rewards coupon automatically printed from the register. Customer DV received 60 cents in gas rewards, because he filled six prescriptions at 10 cents per prescription. Customer DV is a GHP beneficiary, enrolled in Missouri Medicaid.

58. On or about November 8, 2012 Kmart store 4157 filled prescriptions 6892284, 6893267, 6896659, 6896660, 6891061, and 6891162 for customer IN. Customer IN's gas rewards coupon automatically printed from the register. Customer IN received 60 cents in gas rewards, because he filled six prescriptions at 10 cents per prescription. Customer IN is a GHP beneficiary, enrolled in MMO Part D Senior Program.

59. On or about November 5, 2012 Kmart filled prescriptions 6953924 and 6653971 for customer GF. Customer GF's gas rewards coupon automatically printed from the register. Customer GF received 20 cents in gas rewards, because he filled two prescriptions at 10 cents per prescription. Customer GF is a GHP beneficiary, enrolled in Medicare Part D.

60. On or about November 7, 2012 Kmart store 9336 filled prescription 6953971 for customer LF. Customer LF's gas rewards coupon automatically printed from the register. Customer LF received 10 cents in gas rewards, because he filled one prescription at 10 cents per prescription. Customer LF is a GHP beneficiary, enrolled in Medicare Part D.

61. On or about November 8, 2012 Kmart filled prescription 2211543 for customer DV. Customer DV's gas rewards coupon automatically printed from the register. Customer DV received 10 cents in gas rewards, because he filled one prescription at 10 cents per prescription. Customer DV is a GHP beneficiary, enrolled in Missouri Medicaid.

62. On or about November 6, 2012 Kmart store 4157 filled prescription 6896571 for customer MDW. On November 10, 2012, Kmart store 4157 filled prescription 6896157 for customer MDW. Both prescriptions were rung up together and customer MDW's gas rewards coupon automatically printed from the register. Customer MDW received 20 cents in gas rewards, because he filled two prescriptions at 10 cents per prescription. Customer MDW is a GHP beneficiary, enrolled in Medicare Part D and Missouri Medicaid.

63. On or about November 10, 2012 Kmart store 4157 filled prescription 6953971 for customer AW. Customer AW's gas rewards coupon automatically printed from the register. Customer AW received 10 cents in gas rewards, because he filled one prescription at 10 cents per prescription. Customer AW is a GHP beneficiary, enrolled in Missouri Medicaid.

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States of America ex rel. Leighr v. Sears Holdings Corp., et al.*
45

Case 4:13-cv-00988-SRB   Document 1   Filed 10/11/13   Page 45 of 60

64.     On or about November 7, 2012 Kmart store 9336 filled prescriptions 6953971, 6949973, and 6952265 for customer BY. Customer BY's gas rewards coupon automatically printed from the register. Customer BY received 30 cents in gas rewards, because he filled three prescriptions at 10 cents per prescription. Customer BY is a GHP beneficiary, enrolled in Missouri Medicaid.

65.     On or about November 7, 2012 Kmart store 9336 filled prescriptions 4462274 and 6953980 for customer GJ. Customer GJ's gas rewards coupon automatically printed from the register. Customer GJ received 20 cents in gas rewards, because he filled two prescriptions at 10 cents per prescription. Customer GJ is a GHP beneficiary, enrolled in Medicare Part D.

66.     On or about November 6, 2012 Kmart store 9336 filled prescription 6953383 for customer LED. Customer LED's gas rewards coupon automatically printed from the register. Customer LED received 10 cents in gas rewards, because he filled one prescription at 10 cents per prescription. Customer LED is a GHP beneficiary, enrolled in Medicare Part D.

67.     On or about November 7, 2012 Kmart store 9336 filled prescriptions 4462275 and 6953983 for customer GF through Medicare Part D. Kmart also filled prescriptions 6953983, 6953985, 6953990, and 6953991 for Customer GF's through Kmart's Prescriptions Savings Club. Customer GF's gas rewards coupon automatically printed from the register. Customer GF received 60 cents in gas rewards, because he filled six prescriptions at 10 cents per prescription. Customer GF is a GHP beneficiary, enrolled in Medicare Part D.

68. On or about November 7, 2012 Kmart store 9336 filled prescriptions 6953994 and 6953993 for customer DEJ. Customer DEJ's gas rewards coupon automatically printed from the register. Customer DEJ received 20 cents in gas rewards, because he filled two prescriptions at 10 cents per prescription. Customer DEJ is a GHP beneficiary, enrolled in Medicare Part D.

69. On or about November 2, 2012 Kmart store 9336 filled prescriptions 6945557, 4462257, and 4462254 for customer LS. Customer LS's gas rewards coupon automatically printed from the register. Customer LS received 30 cents in gas rewards, because he filled three prescriptions at 10 cents per prescription. Customer LS is a GHP beneficiary, enrolled in Medicare Part D and Missouri Senior Rx.

70. On or about November 12, 2012 Kmart filled prescriptions 6890279, 6890281, 6890282, 6893523 and 6896730 for customer LD. Customer LD's gas rewards coupon automatically printed from the register. Customer LD received 50 cents in gas rewards, because he filled five prescriptions at 10 cents per prescription. Customer LD is a GHP beneficiary, enrolled in Medicare Part D.

71. On or about July 28, 2013 Kmart store 4157 filled prescription 6901115 for customer MH. Customer MH's gas rewards coupon automatically printed from the register. Customer MH received 30 cents in gas rewards, because his copay total was $69.59, and over $50. Customer MH is a GHP beneficiary, enrolled in Medicare Part D.

72. On or about August 1, 2013 Kmart store 4157 filled prescription 7037083 for customer FH. Customer FH's gas rewards coupon automatically printed from the register. Customer FH received 10 cents in gas rewards, because he filled one prescription at 10 cents per prescription. Customer FH is a GHP beneficiary, enrolled in Medicare Part D.

73. On or about July 17, 2013 Kmart filled prescriptions 7201350 and 2217418 for customer KJR. Customer KJR's gas rewards coupon automatically printed from the register. Customer KJR received 20 cents in gas rewards, because he filled two prescriptions at 10 cents per prescription. Customer KJR is a GHP beneficiary, enrolled in Missouri Medicaid.

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States of America ex rel. Leighr v. Sears Holdings Corp., et al.*
46

Case 4:13-cv-00988-SRB   Document 1   Filed 10/11/13   Page 46 of 60

**VI.    Kmart Was Aware Of The Ineligibility Of GHP Beneficiaries But Did Not Enforce Any Policies To Exclude Them From Receiving Benefits**

67. Kmart was aware that GHP beneficiaries were excluded from receiving any promotional pharmacy benefits, including discounts base on coupons and gas discounts. However, it knowingly failed to enforce a policy to ensure that its pharmacy staff did not violate the law.

68. On March 7, 2011, Carpenter and Rozene exchanged emails regarding the eligibility of GHP beneficiaries to use coupons. Rozene clarified that "Medicare, medicaide, tricare, federal employees are not eligible for sure. If the state pays anything at all towards their insurance they are not eligible. Usually state plans are paid for some by the govt and that makes them not eligible."

69. On September 23, 2011, Kathleen Wilbers, a Kmart Pharmacist, asked Dunn whether state employees could use coupons when purchasing drugs. In response, Dunn wrote, "If the coupon reduces a copay it cannot be used. We cannot offer people on a state funded program a financial incentive to shop with us vs. going to another pharmacy."

70. However, Kmart did not terminate its practice of split-billing and awarding GHP beneficiaries with its promotional programs. Leighr has provided documentation of Kmart using coupons to reduce the copay of GHP beneficiaries which occurred long after Dunn's clarification email.

71. On July 9, 2012, Tanya E M De Visser filed a Help Ticket with Kmart regarding the eligibility of customers with state insurance plans for receiving promotional pharmacy offers from Kmart.

72. On July 10, 2012, Martha Alvarez responded that "any Federal, State, or local government insurance (even if it's provided by a commercial payer) is excluded from any coupons, cash cards etc."

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States of America ex rel. Leighr v. Sears Holdings Corp., et al.*
47

Case 4:13-cv-00988-SRB   Document 1   Filed 10/11/13   Page 47 of 60

73. However, Leighr has provided documentation of hundreds of instances of GHP beneficiaries being able to use copay coupons and receiving gas discounts after the July 10, 2012 response to the Help Ticket explicitly stated that GHP beneficiaries were excluded.

74. From the temporally diverse clarifications regarding the ineligibility of GHP beneficiaries, it is clear that Kmart was aware of these violations. However, Kmart encouraged these fraudulent practices in order to create a larger customer base and increase its revenue. In fact, Kmart has and continues to engage in fraudulent practice to for the purpose of increasing its customer base.

## VII.    Leighr Engages in Protected Activity and Kmart Retaliates Against Him

75. On February 5, 2011, District Store Manager Rebecca Ludwig ("Ludwig"), Store Manager for Store 9332 Dave Preiner ("Preiner"), and Pharmacy District Manager Tal Rozene exchanged e-mails, alleging that Leighr was not communicating correctly with customers about Kmart's Shop Your Way Rewards Program ("SYWR")[2].

76. An unidentified individual posted the e-mail exchange on the Business Communications Board outside the break room of store number 9332. Leighr disclosed the issue to a friend, Kmart Pharmacist Boyd Carpenter ("Carpenter"). Carpenter was angry and reported the incident to Kmart's ethics hotline, and shortly after, the e-mail was removed from the board.

77. On May 20, 2011, Kmart Pharmacist Dale Baltrus ("Baltrus") sent Rozene an e-mail discussing Preiner's displeasure with Leighr's handling of SYWR. Preiner had been collecting program applications from customers throughout the store and expecting pharmacy employees to

---

[2] The Shop Your Way Rewards Program is an incentive program, which Relator believes violates the Anti-Kickback Statute when benefits are offered to GHP beneficiaries. This program has been mentioned in a previously filed complaint, *United States ex rel. Yarberry v. Sears Holding Corp., et al.*

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States of America ex rel. Leighr v. Sears Holdings Corp., et al.*
48

Case 4:13-cv-00988-SRB    Document 1    Filed 10/11/13    Page 48 of 60

enter the applications into the system. However, this method did not allow any way to check whether the applicant was a GHP beneficiary, so Leighr refused.

78. On May 21, 2011, Rozene replied to Baltrus, stating that Kmart terminated a store manager, assistant manager, and several other employees. Rozene indicated that the termination resulted from practices similar to Leighr's. Rozene informed Preiner that he did not want anyone else to lose their jobs.

79. Around the same time as the email exchange between Rozene and Baltrus, Store Manager Susan Neely Springfield store #7193 ("Neely") began to harass Leighr about not getting SYWR applications in the pharmacy.

80. Neely wanted Leighr to take customers' information from the pharmacy computer and input the information into the SYWR program's system, thus enrolling customers in SYWR without the customers' knowledge or consent. Leighr refused on the basis that the practice would violate HIPPA. Neely said the corporate office directed the practice.

81. On many occasions, Neely would say that she did not care how Leighr got the cards and increased enrollment in the SYWR program, so long as he got them.

82. On August 22, 2011, Kmart transferred Leighr back to Kansas City. However, Dunn and Genola scheduled Leighr for only one day of work.

83. Leighr noticed that Pharmacist Meredith Gilmore ("Gilmore") was scheduled to work later that week, so he asked Dunn who she was, via a phone conversation. Dunn responded that Kmart hired Gilmore as a full-time pharmacist, and because she was a full-time employee, Dunn could not give Leighr her hours. Dunn went on to say that he did not have to give Leighr any hours, said that him and Leighr were "done," and hung up the phone.

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States of America ex rel. Leighr v. Sears Holdings Corp., et al.*
49

Case 4:13-cv-00988-SRB   Document 1   Filed 10/11/13   Page 49 of 60

84. Leighr interpreted Dunn's statement to mean that Leighr's employment was terminated so he closed the pharmacy for the day. Technician Cindy McMichael ("McMichael") witnessed the conversation.

85. McMichael asked who would replace Leighr, so Leighr called Dunn to find out. Dunn told Leighr that he was "done" only if he did not take the hours that were given to him. Leighr agreed, and Genola sent Leighr his schedule, which required him to travel to Jefferson City, Missouri, a two-and-one-half hour drive from Kansas City.

86. The same day, Leighr learned from co-workers that Kmart not only hired Gilmore as a full-time pharmacist in Kansas City, but it also hired full-time Pharmacist Tatyana Hutchinson ("Hutchinson"). Leighr also learned that Gilmore and Hutchinson were recent graduates, and were not experienced pharmacists like Leighr.

87. In January 2012, Leighr and his wife had a child while on COBRA, and Leighr's mother-in-law passed away. Leighr requested only a couple of days off because as a Casual-on-Call employee he did not accrue any vacation time.

88. However, though Dunn had approved the request, he called Leighr the following Sunday demanding to know why the pharmacy had not been opened at store number 4427, where Leighr was scheduled to work.

89. In February 2012, Leighr became a full-time employee of Kmart pharmacies again, as a Floating Pharmacist for the Kansas City, Missouri area. Leighr's "floater" position meant that Kmart did not assign him to a specific pharmacy, but instead, Leighr was to float to pharmacies throughout the Kansas City area as need arose at various pharmacies.

90. After Leighr began to protest all of Kmart's fraudulent activity, Defendants retaliated against Leighr by transferring him out of his district, and into the Springfield/Branson, Missouri

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States of America ex rel. Leighr v. Sears Holdings Corp., et al.*
50

Case 4:13-cv-00988-SRB   Document 1   Filed 10/11/13   Page 50 of 60

district. Leighr has been scheduled to work at Jefferson City, a pharmacy that is over four hours away from Leighr's home in Kansas City, in retaliation and in an effort to create an intolerable work environment for him. Kmart assigned Leighr to far-ranging geographic assignments, involving travel of hundreds of miles with inconsistent and undesirable work hours, and denied Leighr permanent placement while new hires received favorable treatment.

91. Leighr's work assignments have forced him to travel to the following pharmacies:

    a. Kmart store no. 9353 in Crystal City, MO, which was over 4 hours away from Leighr's home.

    b. Kmart store no. 9334 in Florissant, MO, which was almost 4 hours away from Leighr's home.

    c. Kmart store no. 3759 in Ballwin, MO, which was almost 4 hours away from Leighr's home.

    d. Kmart store no. 3934 in Rolla, MO, which was almost 4 hours away from Leighr's home.

    e. Kmart store no. 7193 in Springfield, MO, which was almost 3 hours away from Leighr's home.

    f. Kmart store no. 3579 in Springfield, MO, which was almost 3 hours away from Leighr's home.

    g. Kmart store no. 7710 which was over 3 hours away from Leighr's home.

92. On June 18, 2012, June 21, 2012, and July 1, 2012, Leighr sent letters to the Human Resources department at Kmart, detailing Kmart's retaliation against him, and asking that his case be investigated by an independent party. In return, the Human Resources department set up a meeting to discuss Leighr's case and did not resolve the problems which Leighr had reported.

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States of America ex rel. Leighr v. Sears Holdings Corp., et al.*
51

Case 4:13-cv-00988-SRB   Document 1   Filed 10/11/13   Page 51 of 60

93. Carpenter, Leighr's coworker, was aware of Leighr's concerns regarding the legality of Kmart's practices. Over time, Carpenter too began questioning Kmart's practices. In an email to Leighr on August 3, 2012, Carpenter admitted to Leighr that Leighr "seems to have rubbed off on [him] about little parts of the law." After pointing out illegalities of other programs, Carpenter felt that he would be on the "'KMART RADAR' with cross-hairs on [his] back."

94. Carpenter did not want to endure the same treatment that Kmart has dispensed, and continues to dispense, to Leighr in retaliation for Leighr's protests of Kmart's illegal policies.

## VIII. Damages to the Government

95. According to National Community Pharmacists Association (NCPA), an average pharmacy fills about 64,000 prescriptions per year. According to Rozene as well as Kmart pharmacy statistics, 30% of all prescriptions filled at Kmart were filled through GHPs. Therefore, 19,200 (30% of 64,000) of the prescriptions filled at a given Kmart per year were filled through GHPs.

96. According to Relator, roughly 95% of all GHP beneficiaries that use Kmart pharmacy receive gas discount vouchers for their purchases.

97. Every prescription filled equates to 10 cents off per gallon of gas, with a 20 gallon limit. Therefore, each prescription filled can translate to a maximum of a $2.00 total price reduction at the gas station.

98. With roughly 18,240 (95% of 19,200) prescriptions, at $2.00 each, Kmart provides approximately $36,480 in illegal remunerations per store, per year, via gas discount vouchers. Across 1000 stores, Kmart provides approximately $36,480,000 in gas discount vouchers as remunerations to GHP beneficiaries.

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States of America ex rel. Leighr v. Sears Holdings Corp., et al.*
52

Case 4:13-cv-00988-SRB    Document 1    Filed 10/11/13    Page 52 of 60

99. According to the instances of Kmart's illegal activity, as reported by Relator, a significant number of fraudulent claims have been submitted to the government. Based on the average of split-billing instances mentioned in this complaint, Kmart receives approximately $12.33 in profit by split billing each prescription filled by a GHP beneficiary.

100. Using the numbers above, if Kmart fills 18,240 prescriptions per year, per pharmacy for GHP beneficiaries, then it receives approximately a total of $224,899.20 per year, per pharmacy in profit for claims submitted for GHP beneficiaries. Across 1000 pharmacies nationwide, Kmart has received approximately $224,899,200 in profit for prescriptions filled by GHP beneficiaries via split-billing and the use of manufacturer coupons.

101. The actual loss to the government due to split-billing and manufacturer coupons could also be calculated as the difference between the government payout for brand-name drugs and the government payout for generic counterparts (or therapeutically equivalent alternatives).

102. In addition, Kmart claims to receive a new "revenue stream" from manufacturing companies for selling their brand-name drugs rather than their generic equivalents.

103. Relator is unaware of the total benefit Kmart receives by promoting manufacturer's coupons, because the manufacturing companies send the money to Kmart's corporate office.

104. In addition, by adopting illegal billing schemes and offering illegal kickbacks to customers to induce a larger customer base, Kmart is able to increase its non-pharmacy sales. On average, Kmart pharmacy customers spend more than non-pharmacy customers, because they are more likely to fill their baskets when they fill their prescriptions.

105. Kmart caused the government damages of approximately $224,899,200 for the split billing scheme. Kmart has submitted claims for payment to both the government and to a third party (these third party claims were reimbursed via manufacturer's coupons.)

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States of America ex rel. Leighr v. Sears Holdings Corp., et al.*
53

Case 4:13-cv-00988-SRB   Document 1   Filed 10/11/13   Page 53 of 60

106. By using the manufacturer's coupons, Kmart was able to reduce the co-pay for the customer. This reduction in price should have been subtracted from what was submitted to the government, but it was not. We have calculated these damages as the profit which Kmart made by reducing the price for the customer, not the government, and being reimbursed by a third party.

107. Kmart also caused actual to the government of approximately $36,480,000 by soliciting remunerations in the form of gas vouchers to GHP beneficiaries. This effectively reduces the amount which they GHP beneficiaries have to pay at Kmart pharmacies. By law, the government should be receiving that discount, not the customers, so the government was damaged by the amount of the discount which the customer received.

108. The approximate total of damages as a result of both of Kmart's fraudulent schemes is $261,379,200, The Defendants knowingly used a false record to get a fraudulent claim paid or approved by the government by billing both the government and a third party for the same prescription. Furthermore, Kmart offered GHP beneficiaries kickbacks through its various pharmacy incentive programs to induce customers to transfer their prescriptions to Defendants' pharmacies as well as increase the volume of prescriptions filled and customer foot traffic in their stores.

## COUNT I:  FALSE CLAIMS ACT VIOLATIONS
### 31 U.S.C. §§ 3729(a)(1)(A) and (a)(1)(B)
### Against All Defendants

109. Relator realleges and incorporates the allegations set forth above as though fully alleged therein.

110. Defendants, by and through their officers, agents, supervisors and employees, knowingly presented or caused to be presented to the United States Government false or fraudulent

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States of America ex rel. Leighr v. Sears Holdings Corp., et al.*
54

Case 4:13-cv-00988-SRB   Document 1   Filed 10/11/13   Page 54 of 60

claims for payment or approval under the federally-funded Medicaid and Medicare programs in violation of 31 U.S.C. § 3729(a)(1)(A).

111. Defendants' pharmacy management was aware of FCA laws and compliance standards but justified its instructions to pharmacy staff to violate such law and standards

112. The United States, unaware of the falsity of the claims and/or statements made by Defendants and in reliance on the accuracy thereof, paid Defendants for such false or fraudulent claims.

113. By reasons of the acts and conduct of Defendants in violation of 31 U.S.C. § 3729(a)(1), the United States has suffered actual damages, including the total amounts paid in response to all such false or fraudulent claims for payment. In addition, the United States is entitled to recover civil money penalties, and other monetary relief as deemed appropriate.

## COUNT II: Anti-Kickback Statute Violations
### 42 U.S.C. § 1320a-7b
### Against All Defendants

114. Relator realleges and incorporates the allegations set forth above as though fully alleged therein.

115. Defendants, by and through their officers, agents, supervisors, and employees, knowingly presented and caused to be presented to the United States Government and its officials false records or statements material to false or fraudulent claims and knowingly failed to disclose material facts in order to obtain payment or reimbursement for prescriptions to GHP beneficiaries.

116. Defendants knowingly offered kickbacks to customers when it instructed pharmacy staff to award GHP beneficiaries benefits of incentive programs implemented to increase Kmart's

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States of America ex rel. Leighr v. Sears Holdings Corp., et al.*
55

Case 4:13-cv-00988-SRB   Document 1   Filed 10/11/13   Page 55 of 60

customer base, even though GHP beneficiaries' were ineligible for such incentives and Defendants' practice violated FCA laws.

117. The United States, unaware of the falsity of the claims made by Defendants and in reliance of the accuracy thereof, paid Defendants for such false or fraudulent claims, through reimbursements to the pharmacy.

118. 42 U.S.C. § 1320a-7b(g) provides that a claim that includes items or services resulting from a violation of this section constitutes a false or fraudulent claim for purposes of the federal False Claims Act.

### COUNT III: Retaliation
### 31 U.S.C. § 3730(h)
### Against All Defendants

119. Leighr realleges and incorporates the allegations set forth above as though fully alleged therein.

120. Leighr is an "employee," Kmart is an "employer," as the terms are defined by the False Claims Act

121. As set forth above, and in connection with the foregoing scheme, Defendants knowingly submitted false claims for payment by the United States in violation of the False Claims Act.

122. Leighr engaged in activity protected under the False Claims Act by engaging in lawful acts in the furtherance of a *qui tam* action under the FCA and other efforts to stop Defendants' violation of the False Claims Act.

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States of America ex rel. Leighr v. Sears Holdings Corp., et al.*
56

Case 4:13-cv-00988-SRB   Document 1   Filed 10/11/13   Page 56 of 60

123. Leighr engaged in protected activity by investigating the legality of the Defendants' conduct, by making disclosures regarding the Defendants' which led in part to the instant *qui tam* action.

124. To redress the harms he has suffered as a result of the acts and conduct of Kmart in violation of 31 U.S.C. § 3730(h), Leighr is entitled to damages including but not limited to litigation costs and reasonable attorneys' fees.

## **PRAYER FOR RELIEF**

WHEREFORE, the Relator Joshua Leighr, acting on behalf of and in the name of the United States of America, and on his own behalf, prays that judgment be entered against Defendants for violations of the False Claims Act as follows:

(a)     In favor of the United States against the Defendants for treble damages to the Federal Government from the submission of false claims, and the maximum civil penalties for each violation of the False Claims Act;

(b)     In favor of the Relator for all compensatory and punitive damages, including personal injury damages for pain and suffering and loss of reputation, back pay, and interest, and attorneys' fees and costs to which he is entitled pursuant to 31 U.S.C § 3730(h);

(c)     For all costs of the False Claims Act civil action; and

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States of America ex rel. Leighr v. Sears Holdings Corp., et al.*
57

(d) In favor of the Relator and the United States for further relief as this court deems just and equitable.

Respectfully submitted,

_s/ John M. Parisi_
John M. Parisi, Mo. Bar #36422
Shamberg, Johnson & Bergman
2600 Grand Suite 550
Kansas City, Missouri 64108
(816) 474-0004
jparisi@sjblaw.com
*Counsel for Plaintiff-Relator*

David L. Scher (*Pro Hac Vice)*
The Employment Law Group, P.C.
888 17th Street, N.W., Suite 900
Washington, D.C. 20006
(202) 261 – 2810
(202) 261 – 2835 (facsimile)
dscher@employmentlawgroup.com
*Counsel for Plaintiff-Relator*

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States of America ex rel. Leighr v. Sears Holdings Corp., et al.*
58

Case 4:13-cv-00988-SRB   Document 1   Filed 10/11/13   Page 58 of 60

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Relator Joshua Leighr demands a jury trial.

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States of America ex rel. Leighr v. Sears Holdings Corp., et al.*
59

Case 4:13-cv-00988-SRB   Document 1   Filed 10/11/13   Page 59 of 60

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via certified mail, on this 11th day of October, 2013, upon:

Eric Holder, Esq.
Attorney General of the United States
Office of the Attorney General, Civil Division
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

Tammy Dickinson, Esq.
United States Attorney
Western District of Missouri
U.S. Attorney's Office
Room 5510
400 East 9th Street
Kansas City, MO 64106

Thomas M. Larson
Assistant United States Attorney
United States Attorney's Office
Western District of Missouri
Room 5510
400 East 9th Street
Kansas City, Missouri 64106

_s/ John M. Parisi_
John M. Parisi

*CONFIDENTIAL AND UNDER SEAL – QUI TAM COMPLAINT*
*United States of America ex rel. Leighr v. Sears Holdings Corp., et al.*
60